STATE v. JAMES EDWARD WOODRUFF.

(Filed 1 May 1963.)

**1. Criminal Law § 71—**

The competency of a confession is a preliminary question for the trial court and the court's determination of the question of the voluntari-ness of the confession is conclusive on conflicting evidence, but what facts amount to threats or promises rendering a confession involuntary and in-competent is a question of law which is reviewable on appeal.

**2. Same—**

The use of promises or threats invalidates a subsequent confession un-less it is made to appear that their influence had been entirely done away with before the confession was made.

**3. Same— Facts in evidence held not to support conclusion that confes-sion was voluntary.**

Evidence tending to show that the sheriff answered in the affirmative defendant's inquiry whether he would like information relating to a particular homicide, obtained favors and concessions on the part of State officials to induce defendant to aid in solving the homicide, and promised that if the evidence obtained involved defendant in the commission of the offense that he would try to help defendant, without evidence show-

ing affirmatively that any promises were withdrawn prior to defendant's confession, *held* insufficient to support the conclusion that the confession was voluntary, and the admission of the confession in evidence is prejudicial error.

APPEAL by defendant from *Clarkson, J.,* August Term 1962 of CALDWELL.

This is a criminal action in which the defendant James Edward Woodruff was tried upon a bill of indictment charging him with the premeditated murder of Mrs. Mary Chandler. The defendant pleaded not guilty.

The State's case rests almost exclusively on confession and admissions against interest purportedly made by the defendant. Defendant's brother, Odell Woodruff, on 27 February 1962, signed a confession to the effect that he and his brother agreed to rob the home occupied by Thomas R. Chandler and his wife, Mary Chandler.

According to the confession, Odell Woodruff entered the Chandler home and pretended to want to buy liquor. When he asked Chandler for his money, Chandler grabbed a shotgun. Odell shot him (which resulted in his death). Mrs. Chandler reached under a mattress and he shot her (she apparently died instantly). Odell's confession further stated that the defendant James Edward Woodruff came through the door of the Chandler home about that time; they searched the house but apparently found no money, although officers later discovered approximately $5,700 in cash in the house. Following Odell's confession he pleaded guilty to murder in the first degree and is serving a life sentence.

Later, Odell repudiated his confession and claims that he confessed and pleaded guilty merely to avoid taking any chance on being convicted and sentenced to death in the gas chamber. This defendant likewise denied that he ever admitted to the truth of Odell's confession as to his participation in the robbery-murder and offered evidence tending to establish an alibi.

When Odell's confession was read to the defendant James Edward Woodruff, according to the State's evidence the defendant agreed that it was correct except for three things which bear no substantial relationship to the question of guilt or innocence.

The crime of which the defendant was convicted was committed on 29 October 1959, and from that time until in February 1962 this defendant was not under suspicion of having participated in the commission of the crime.

In the meantime, the defendant James Edward Woodruff was arrested and held in jail on certain charges of forgery. He got in touch

with J. B. Myers, Sheriff of Caldwell County, while in jail and asked him if he would like to know something about the Chandler killings. The Sheriff told him he would. The defendant wanted to have several forgery charges against him consolidated for trial and he further wanted his cousin, Wilma Carroll, who was subject to an 18 months' prison sentence, to serve her time in jail in Caldwell County instead of being committed to the Women's Prison in Raleigh. Sheriff Myers talked with the proper authorities and the requests were granted. The defendant then informed the Sheriff that a few weeks before the Chandler slayings he and Odell were out one night driving with a certain Bobby Coffey and that Coffey suggested that they should rob the Chandlers because the Chandlers kept money in the house. The defendant said he refused.

Thereafter, Sheriff Myers located Bobby Coffey in Winston-Salem and ascertained where he was rooming. Sheriff Myers came to Raleigh and requested the Governor, the Director of Prisons, and the Chairman of the Parole Commission to grant the defendant, who was at that time confined in prison, a temporary parole in order that the defendant might work with the Sheriff on the Chandler case. The parole was arranged and Woodruff was taken to Winston-Salem and housed in a hotel. The Sheriff gave the defendant $40.00 on two occasions in Winston-Salem and told the defendant to use the money any way he could to get information. The Sheriff's testimony tends to show that the defendant was authorized to buy liquor and to get Bobby Coffey drunk, if necessary, to get information out of him about the Chandler killings. Bobby Coffey was arrested in Winston-Salem but no pertinent evidence was obtained out of him at that time and he was later released. The defendant was then taken to Joyceton in Caldwell County and housed in a motel. The next day, the defendant's wife was brought to the motel and permitted to stay with her husband two or three nights. The Sheriff paid the motel bill. The Sheriff then took the defendant to his father's home where he and his wife stayed for about a week until the defendant was returned to prison.

The record is not clear as to the exact date the Sheriff concluded that the defendant was a party to the murders of Mrs. Mary Chandler and her husband, Thomas R. Chandler. However, it does not appear that the promises of Sheriff Myers to help the defendant if the defendant would help solve the Chandler case were withdrawn prior to the time the alleged confession of Odell Woodruff was read to this defendant in the office of the S.B.I. in Raleigh on 28 February 1962.

In the trial below, Sheriff Myers testified that it looked like James Woodruff, Odell Woodruff, and Bobby Coffey were all three involved

in the murders of the Chandlers. "(I)t looked like all three were in it — at that time it looked like Ed Woodruff did not go in the house and was not involved all the way in this thing, I did tell Ed Woodruff several times if he would help me out on this thing I would certainly appreciate it." (The defendant is referred to in the record at times as James and at other times as Ed Woodruff.)

The following question was propounded to Sheriff Myers: Q. "I believe you have answered the question, but to make sure * * * you did give him to understand at one time that if he confessed that it would go lighter with him — that you would try to see that it went lighter with him?" A. "I told him at one time — that was before he was even suspected in this thing — that if he was in this and he could explain and get this thing with us to where it would involve him (at that time the testimony was beginning to show he may be in this thing) — that if he would help us with this thing, we certainly would try to help him. Never did I tell him anything like this after he was once suspected of this thing."

The defendant testified on *voir dire* that he did not admit to the truth of the confession of Odell Woodruff which was read to him. He testified that he said, "There's three lies right there as plain as the nose on your face. You can check. And Mr. Vanderford (an S.B.I. agent) turned around and said, 'There's just three things wrong with it?' and I said, 'It's a d...... lie * * *.' No, I never did admit that any part of the statement was true."

The evidence further tends to show that sometime prior to his purported confession the defendant was taken to a room in Raleigh at 8:00 o'clock one morning and kept there until 4:00 o'clock the next morning, during which period of twenty hours he had one hamburger and a cup of coffee. In the meantime, he took two lie detector tests and was questioned off and on during this entire period of time; that during a part of this time he was handcuffed to a chair.

The court held the evidence offered on the *voir dire* was competent and ruled that the alleged confessions, if any, made by the defendant were not induced by any threats or by any inducements. The witnesses offered on the *voir dire* then testified before the jury and the State offered the confession of Odell Woodruff against the defendant. The jury returned a verdict of guilty with a recommendation of life imprisonment, and sentence was pronounced in accord therewith.

From the judgment imposed, the defendant appeals, assigning error.

*Attorney General Bruton, Asst. Attorney General Harry W. McGalliard for the State.*

*A. R. Crisp and Hal B. Adams for defendant.*

DENNY, C.J.   The appellant assigns as error the ruling of the court below to the effect that the alleged confessions, if any, made by the defendant, were not induced by any threats or by any inducements, and to the admission of such purported confessions, together with the confession of Odell Woodruff against the defendant.

The competency of a confession is a preliminary question for the trial court, and is not ordinarily subject to review. *S. v. Whitener,* 191 N.C. 659, 132 S.E. 603; *S. v. Fain,* 216 N.C. 157, 4 S.E. 2d 319; *S. v. Rogers,* 216 N.C. 731, 6 S.E. 2d 499; *S. v. Manning,* 221 N.C. 70, 18 S.E. 2d 821; *S. v. Hammond,* 229 N.C. 108, 47 S.E. 2d 704.

In *S. v. Biggs,* 224 N.C. 23, 29 S.E. 2d 121, Stacy, C.J., speaking for the Court, said: "It is conceded that if the evidence in respect of the voluntariness of the statements were merely in conflict the court's determination would be conclusive on appeal. *S. v. Hairston,* 222 N.C. 455, 23 S.E. 2d 885 * * *. Equally well established, however, is the rule that 'what facts amount to such threats or promises as make confessions not voluntary and admissible in evidence is a question of law, and the decision of the judge in the court below can be reviewed by this Court.' *S. v. Andrew,* 61 N.C. 205 * * *. And further, where a 'person in authority' offers some suggestion of hope or fear, *S. v. Livingston,* 202 N.C. 809, 164 S.E. 337, *S. v. Grier,* 203 N.C. 586, 166 S.E. 595, to one suspected of crime and thereby induces a statement in the nature of a confession, the decisions are at one in adjudging such statement to be involuntary in law, and hence incompetent as evidence. * * *

"A free and voluntary statement in the nature of a confession is deserving of the highest credit, because it is presumed to flow from the strongest sense of guilt, but any statement wrung from the mind by the flattery of hope, or by the torture of fear, comes in such questionable shape as to merit no consideration. *S. v. Patrick,* 48 N.C. 443. * * *"

In *Barnes v. State,* 36 Tex. 356, the Court said: "The legal proposition that confessions made while under an arrest, induced by promises or threats, cannot be used in evidence against a party making them, has been too long and definitely settled to now require argument or citation of authority to sustain it. It is also quite well settled, as a presumption of law, that the influence of threats or promises once made continue to operate until rebutted by proof clearly showing that it had ceased to operate."

In *S. v. Drake,* 113 N.C. 624, 18 S.E. 166, this Court said: "It is a well-settled rule that if promises or threats have been used, it must be

made to appear that their influence has been entirely done away with before subsequent confession can be deemed voluntary, and therefore admissible."

We think the evidence introduced in the hearing below on the competency of the purported confession, tends to show the defendant had every right to believe that the Sheriff of Caldwell County had substantial influence with court officials and others in places of authority. It will be noted that as a prerequisite or condition upon which the defendant had agreed to give information that might be helpful in solving the Chandler killings, he requested that several charges against him for forgery be consolidated for trial and, further, that his cousin, Wilma Carroll, who had been convicted and given a prison term of 18 months, be permitted to serve her sentence in jail in Caldwell County instead of being committed to the Women's Prison in Raleigh. Sheriff Myers obtained approval of both requests. Thereafter, Sheriff Myers had requested and gotten the approval of the Governor, the Director of Prisons, and the Chairman of the Parole Commission to grant the defendant a temporary parole in order that he might help the Sheriff in solving the Chandler killings. While on parole, the defendant was housed in a hotel in Winston-Salem for several days and given $80.00 spending money, then taken to a motel in Caldwell County where he spent several nights with his wife, and the Sheriff paid the motel bill. Thereafter, the defendant and his wife were carried to the home of defendant's father where they lived together for about a week before the defendant was returned to prison.

Furthermore, we think the Sheriff's testimony with respect to any promises made to the defendant is susceptible of the interpretation that if the defendant would help him solve the Chandler case and it developed that the defendant was involved, he, the Sheriff, would "certainly try to help him." Moreover, we think the evidence suggests the conclusion that this promise was made after the Sheriff felt reasonably sure the defendant was involved in the Chandler killings. The Sheriff was present in Raleigh on 28 February 1962 when the confession of Odell Woodruff was read to the defendant, and there is nothing in the record to indicate that the promise or promises theretofore made to the defendant were not still available to him.

We do not think the purported confession of the defendant can be considered free and voluntary within the meaning of our decisions, and his purported confession and that of Odell Woodruff should have been excluded. It follows, therefore, that the defendant is entitled to a new trial, and it is so ordered.

New trial.