STATE v. JERRY ARNOLD FUQUA.

(Filed 20 January, 1967.)

**1. Criminal Law § 71—**

The findings of fact by the court upon the *voir dire* in regard to the circumstances under which defendant allegedly made the confession sought to be introduced in evidence are conclusive on appeal when supported by competent evidence, but whether such facts support the conclu-

sion of the court that the confession was freely and voluntarily made is a question of law reviewable on appeal.

**2. Same—**

Where the State's evidence, without contradiction, is to the effect that the officer to whom defendant allegedly confessed stated prior to the confession that if defendant wanted to talk to the officer the officer would be able to testify that defendant had talked to the officer and was cooperative, *is held* to disclose a promise by the officer having the natural tendency to arouse in defendant a hope for a lighter punishment if he confessed, tainting the confession and rendering it incompetent.

APPEAL by defendant from *Bickett, J.,* June 1966 Criminal Session of ALAMANCE.

Defendant Jerry Arnold Fuqua, Richard May and Floyd May were respectively charged with breaking, entering and larceny by bill of indictment returned by the Grand Jury of Alamance County at the June 1966 Criminal Session of Alamance. All three defendants entered pleas of not guilty.

The State's evidence tended to show that the shop of Carolina Cotton Shops, Inc., was broken into and a box containing cash and checks of the approximate value of $305.00 was taken during the night of 26 January 1965.

W. J. Cook, at that time a police officer in the town of Mebane, testified on *voir dire* and in the absence of the jury substantially as follows, except where quoted: That he visited Richard and Floyd May in their cells at the Orange County jail at about 1:00 o'clock a.m. on 15 March 1965, and after obtaining statements from them he talked with Jerry Fuqua in a room of the Durham County jail during the afternoon of 15 March 1965; that most of defendant's statements consisted of "filling in" and "yes" and "no" answers to repetition by the officer of statements made by Richard May and Floyd May. In response to question of counsel, officer Cook gave the following pertinent testimony:

"Q. Did you make any statement to him relative to warning him of his rights?

A. Yes sir.

Q. What statement did you make to him?

A. I advised him that he did not have to talk to me unless he wanted to and he had the right to counsel and anything he said could be used for or against him in court.

Q. Did you promise him anything?

A. No sir, no more than what I told the other boys, I would be able to testify they cooperated in the case.

Q. Did you threaten him in any way?

A. No sir.

Q.  Did you ask whether or not he wanted you to contact any lawyer?

A.  No sir.

Q.  You said, Mr. Cook, you didn't promise him anything, but you did say if he would tell what he knew about it you would testify he had been cooperative?

A.  Yes, sir, I told him if he wanted to talk to me then I would be able to testify that he talked to me and was cooperative.

Q.  On this particular thing he is charged with here, you said you advised him of his rights to have counsel, but you didn't tell him whether the court would appoint him a lawyer, did you?

A.  No, sir."

Officer Cook further testified that in his opinion defendant was not under the influence of any kind of drugs.

Clyde Junior Allen was called by the defendant and testified to the effect that he was in the cell beside the defendant on 15 March 1965, and that during the morning prior to the questioning by officer Cook the defendant had eaten part of a medicated stick of nose inhaler, and that in his opinion defendant was not in a sober condition at the time he talked to officer Cook.

Defendant did not take the witness stand during the *voir dire* examination.

At the close of the *voir dire,* the court made the following finding:

"The statements made to Mr. W. J. Cook by Mr. Jerry Arnold Fuqua in Durham in the Durham County Jail were made freely and voluntarily and without fear or reward or hope of reward, and after having been fully advised by said W. J. Cook of his rights to remain silent, of his right to counsel, and that anything he might say could be used for or against him in court, and that no inducement was made to Mr. Fuqua. The court further finds as a fact that Mr. Fuqua freely and wilfully and intelligently waived his rights to counsel, and the court further finds as a fact that the defendant Fuqua was not under narcotics, drugs or other medication at the time. . . ."

The jury returned and officer Cook testified over objection and in presence of the jury that appellant stated to him:

"He said on January 26, 1965, sometime around midnight, twelve o'clock, that they drew up the plans for this break in at Junior's home. They left there by walking and went to the old

Ice Plant Road and went to the building. That Richard May helped him up to the window and he removed the pane from the glass and raised the window. That he went inside the building and that he had to — he found the box in the second box that he looked in, and he said he saw another box — money box in there, but he picked it up and shook it and nothing rattled and he didn't take it, that he came back out, closed the window and that they went to — back to Junior's home and they tore the box open with a claw hammer and they divided the money. He and Junior got $60.00 apiece while Richard and Floyd got $45.00 apiece, that they burned the checks. That he went to the pond the next day and stood on the bank of the pond and threw it into the water."

The jury returned a verdict of guilty as charged in the bill of indictment. From the judgment imposed, defendant appeals.

*Attorney General Bruton and Assistant Attorney General Rich for the State.*
*Herbert F. Pierce for defendant.*

BRANCH, J. Appellant assigns as error the ruling of the court below that the confession allegedly made by defendant to officer Cook was voluntary.

"When the State proposes to offer in evidence the defendant's confession or admission, and the defendant objects, the proper procedure is for the trial judge to excuse the jury and, in its absence, hear the evidence, both that of the State and that of the defendant, upon the question of the voluntariness of the statement. In the light of such evidence and of his observation of the demeanor of the witnesses, the judge must resolve the question of whether the defendant, if he made the statement, made it voluntarily and with understanding. . . . The trial judge should make findings of fact with reference to this question and incorporate those findings in the record. Such findings of fact, so made by the trial judge, are conclusive if they are supported by competent evidence in the record. No reviewing court may properly set aside or modify those findings if so supported by competent evidence in the record." *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1. *State v. Barnes,* 264 N.C. 517, 142 S.E. 2d 344; *State v. Outing,* 255 N.C. 468, 121 S.E. 2d 847.

However, "What facts amount to such threats or promises as make confessions not voluntary and admissible in evidence

is a question of law, and the decision of the judge in the court below can be reviewed by this Court; so, what evidence the judge should allow to be offered to him to establish these facts is a question of law. So, whether there be *any evidence* tending to show that confessions were not made voluntarily, is a question of law. But whether the evidence, if true, prove these facts, and whether the witnesses giving testimony to the court touching the facts are entitled to credit or not, and in case of a conflict of testimony which witness should be believed by the court, are questions of fact to be decided by the judge; and his decision cannot be reviewed in this Court, which is confined to questions of law." *State v. Andrew,* 61 N.C. 205; *State v. Whitener,* 191 N.C. 659, 132 S.E. 603; *State v. Woodruff,* 259 N.C. 333, 130 S.E. 2d 641.

The trial court properly excused the jury and heard evidence on *voir dire* as to whether defendant's statement was voluntary, giving defendant opportunity to testify and offer evidence.

It is admitted that officer Cook made statements, or failed to make statements, on which defendant relies in order to show that his confession was involuntary. Therefore, we need not consider whether the trial judge properly found facts in order to conclude that the confession was voluntary, since there was no conflict in the pertinent testimony offered on the *voir dire. State v. Keith,* 266 N.C. 263, 145 S.E. 2d 841.

This Court must, however, decide as a matter of law whether the circumstances of this case rendered the confession inadmissible.

Speaking to the subject of free and voluntary confession in *State v. Roberts,* 12 N.C. 259, Henderson, J., said:

"Confessions are either voluntary or involuntary. They are called voluntary when made neither under the influence of hope or fear, but are attributable to that love of truth which predominates in the breath of every man, not operated upon by other motives more powerful with him, and which, it is said, in the perfectly good man cannot be countervailed. These confessions are the highest evidences of truth, even in cases affecting life. But it is said, and said with truth, that confessions induced by hope or extorted by fear are, of all kinds of evidence, the least to be relied on, and are therefore entirely to be rejected."

And in the same case Taylor, C.J., said: "(A) confession obtained by the slightest emotions of hope or fear ought to be rejected." The principles enunciated in this landmark case have been recognized

by this Court in the cases of *State v. Livingston,* 202 N.C. 809, 164 S.E. 337; *State v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572; *State v. Barnes, supra; State v. Gray, supra.*

In the case of *State v. Woodruff, supra,* the defendant, who was being held on charges of forgery, volunteered to assist the sheriff in the solution of certain murders if the sheriff would use his influence to help him. The evidence reveals that the sheriff came to suspect the defendant was involved in the murders and told him that "he certainly would try to help him" if he confessed. The Court held that the evidence was insufficient to support the conclusion that the confession later made by the defendant was voluntary and that the admission of such confession was prejudicial error.

Where a defendant charged with murder, while imprisoned in the county jail, was induced to confess by the sheriff's promise that if he told the truth the sheriff would do whatever he could for him, it was held that the confession was involuntary and was inadmissible in evidence. *People v. Gonzales,* 136 Cal. 666, 69 P. 487.

In *Couley v. State,* 12 Mo. 462, it appeared that the defendant, accused of burglary, was induced to confess by the officer who arrested him. The officer told defendant "that he would not appear against him if he would confess." The Court held that testimony of a confession thus induced should have been excluded from the jury.

In *United States v. Kurtz,* 26 Fed. Cas. 826 (C.C. D. of C.) defendant was arrested by two constables on a charge of stealing goods and was told by the constables that if he would tell where the goods were, they would do what they could for him. The court rejected the confession as to the goods as being involuntary.

In the instant case the police officer while questioning the defendant, then in jail custody, said to defendant: "That if he wanted to talk to me then I would be able to testify that he talked to me and was cooperative." This statement by a person in authority was a promise which gave defendant a hope for lighter punishment. It was made by the officer before the defendant made his confession, and the officer's statement was one from which defendant could gather some hope of benefit by confessing. The total circumstances surrounding the defendant's confession impels the conclusion that there was aroused in him an "emotion of hope" so as to render the confession involuntary.

The uncontradicted evidence shows that the confession of defendant was not freely and voluntarily given within the meaning of our decisions, and it is incompetent as a matter of law.

We do not deem it necessary to discuss the merit of the defendant's other assignments of error, since there must be a

New trial.