STATE OF NORTH CAROLINA v. STEVE ALLEN MARTIN

No. 8121SC75

(Filed 4 August 1981)

1. **Criminal Law § 66— identification testimony—instructions on credibility of witnesses**

   The trial court in a prosecution for armed robbery did not err in failing to instruct the jury *ex mero motu* that (1) it must find that the identification testimony of two robbery victims was entirely the product of their recollection of the offender at the time of the offense and did not result from photographs shown them by an investigating officer, and (2) in considering the credibility of one victim, the jury should take into account a prior incorrect identification by such victim.

2. **Criminal Law § 66.9— photographic identification—no impermissible suggestiveness—absence of finding**

   Testimony regarding photographic identifications of defendant was not improperly admitted because the court failed to make a specific finding or conclusion that the identification procedures were not impermissibly suggestive where the court's findings clearly established the circumstances enabling the victims to identify defendant, and the trial court concluded that the identification testimony by the victims was admissible.

3. **Criminal Law § 66.8— photograph chosen in pretrial procedure—waiver of objection**

   Defendant waived his right to object to the admissibility of a photograph of defendant chosen from a photographic array by two robbery victims by per-

mitting the victims and a police officer to give testimony about the photograph without objection, and the photograph was properly admitted into evidence over defendant's objection without a showing by the State that the photograph had been legally obtained.

4. **Criminal Law §§ 43.1, 66.8— mug shot used in photographic identification—admissibility**

Where defendant waived his right to object to the use of a photograph of defendant chosen from a photographic array by two robbery victims, the trial court did not err in admitting the photograph into evidence because it was a mug shot which indicated to the jury that defendant had a prior record.

5. **Criminal Law § 102.5— cross-examination of witness—no gross impropriety**

The prosecutor's remarks to defendant during cross-examination did not constitute so gross an impropriety as to require correction *ex mero motu.*

6. **Criminal Law § 134.2— sentencing—right of allocution**

The trial court did not violate G.S. 15A-1334(b) by sentencing defendant without first asking him if he wished personally to address the court, there having been sufficient compliance with the statute where defendant's counsel was given the opportunity to speak in defendant's behalf.

APPEAL by defendant from *Collier, Judge.* Judgment entered 4 November 1980 in Superior Court, FORSYTH County. Heard in the Court of Appeals 8 May 1981.

On 18 August 1980, the Forsyth County grand jury returned indictments charging defendant with two armed robberies. Defendant was convicted by the jury on both charges and sentenced to a prison term of fifteen to twenty-five years. Other facts pertinent to this decision are related below.

*Attorney General Edmisten, by Associate Attorney Barry S. McNeill, for the State.*

*Appellate Defender Project for N.C., by Assistant Appellate Defender Marc D. Towler, for defendant appellant.*

WELLS, Judge.

[1]  In his first argument, defendant contends that the trial court erred in failing to instruct the jury *ex mero motu* that:

(A) It must find that the identification testimony of prosecuting witnesses Holley and Watson was entirely the product of their recollection of the offender at the time of the offense and

did not result from photos shown them by investigating officer Charles; and

(B) In considering the credibility of Holley, the jury should take into account a prior incorrect identification by Holley.

State's evidence at trial indicated that James Holley and Phyllis Watson rented a motel room in Winston-Salem at approximately 10:00 p.m. on 5 June 1980. As the couple unlocked the door to their room, they were pushed into the room from behind and knocked to the floor by two men. The men pulled a gun, tied up the couple and took cash and personal objects from Holley and Watson.

Holley was called to testify at trial and was asked if he saw either of the men in the courtroom. Defense counsel objected to the identification testimony, and a *voir dire* was conducted.

Holley testified on *voir dire* that inside the room a light above a big mirror provided sufficient light to see. Holley estimated that the two men were in the room for five to ten minutes and stated that during that time he looked at defendant's face five or six times. Holley further stated that defendant was not wearing anything over his face and then gave a description of defendant as he appeared the night of the robbery.

Holley testified that on 23 June 1980 a policeman, Officer Charles, brought a stack of twenty-five to fifty photographs to Holley's parents' home for Holley to view. Holley testified that when he came to defendant's photograph he stopped and told Charles that defendant was one of the robbers. Holley did not look through any more photographs. Holley further stated that Charles did not indicate to him who he should choose.

On cross-examination, Holley stated that he had previously viewed some photographs at the police station about a week after the robbery. At that time, Holley chose a photograph which "sort of described" one of the robbers, but did not make a positive identification. Subsequent investigation of Holley's choice eliminated the chosen man as a suspect.

Watson testified on *voir dire* that there was sufficient light in the room for her to see Martin's face in profile while he was gagging her. Watson further testified that she viewed photo-

graphs on three occasions and picked out Martin's photograph on both the second and third occasions. At no time did Officer Charles suggest which photograph she should choose.

The trial judge instructed the jury in pertinent part as follows:

I instruct you that the State has the burden of proving the identity of the defendant as the perpetrator of the crime charged in each of the cases beyond a reasonable doubt. This means that you, the jury, must be satisfied beyond a reasonable doubt that the defendant was the perpetrator of the crime charged in each of the two cases before you may return a verdict of guilty in that case, or those cases.

The main aspect of identification is the observation of the offender by the witness at the time of the offense. In examining the testimony of the witness as to the witness's observation of the perpetrator at the time of the crime, you should consider the capacity the witness had to make an observation through his or her senses, the opportunity the witness had to make an observation, and such details as the lighting at the scene of the crime at the time, the mental and physical condition of the witness, the length of time of the observation and any other condition or circumstance which might have aided or hindered the witness in making the observation.

The identification witness is a witness just like any other witness, that is, you should assess the credibility of the identification witness in the same way you would any other witness in determining the adequacy of the witness's observation and the witness's capacity to observe.

As I instructed you earlier, the State must prove beyond a reasonable doubt that the defendant was the perpetrator of the crime charged in each of the cases. If, after weighing all of the testimony, you are not satisfied beyond a reasonable doubt that the defendant was the perepetrator of the crime charged, it would be your duty to return a verdict of not guilty in that case, or those cases.

Defendant contends that the trial judge erred in omitting from his instructions certain portions of the North Carolina Pattern Instructions — Criminal, § 104.90, on identification.[1] As authority for his position, defendant primarily relies on *United States v. Holley*, 502 F. 2d 273 (4th Cir. 1974), and *United States v. Telfaire*, 469 F. 2d 552 (D.C. Cir. 1972). This Court considered the application of the rules established for the federal trial courts in *Holley* and *Telfaire* to a situation similar to the one at issue here in *State v. Lang*, 46 N.C. App. 138, 143-146, 264 S.E. 2d 821, *rev'd on other grounds*, 301 N.C. 508 (1980). As in *Lang, supra*, we find this case "exhibits none of the special difficulties often presented by identification testimony that would require additional information be given to the jury in order for us to repose confidence in their ability to evaluate the reliability of the identification." *Lang, supra*, at 145.

First, we note that the trial court gave instructions which dealt with the question of identification, the State's burden of proving the identity of defendant, the factors to be considered in determining the reliability of the witness's identification testimony, and reasonable doubt. The attention of the jury, therefore, was sufficiently focused on the issue of identity without the omitted instructions. Second, the pattern instruction or its substantial equivalent was not requested by defendant. *See State v. Lang, supra*. Third, although Holley had made a prior

---

1. The omitted portions were:

In examining the testimony of the witness as to his observation after the crime you should consider (describe relevant factors). However, your consideration must go further. The identification of the defendant by the witness as the perpetrator of the offense must be purely the product of the witness' recollection of the offender and derived only from the observation made at the time of the offense. In making this determination you should consider the manner in which the witness was confronted with the defendant after the offense, the conduct and comment of the persons in charge of the (describe confrontation; e.g., line-up, show-up, etc.) and any circumstances or pressures which may have influenced the witness in making an identification, and which would cast doubt upon or reinforce the accuracy of the witness' identification of the defendant.

· · · · · ·

You may take into account, in your consideration of the credibility of the identification witness, any occasion upon which the witness failed to make an identification of the defendant and/or any occasion upon which the witness made an identification that was not consistent with his in-court identification.

*tentative* identification of a person other than defendant as one of the perpetrators of the robbery, Holley subsequently made a *positive* identification of defendant from another photographic array. Defendant's photograph was not among the photographs first shown to Holley when he made the tentative identification, and, more importantly, Holley indicated that the person picked in the tentative identification only looked somewhat similar to the robber. Fourth, there was more than just a one-on-one identification here to implicate defendant in the robbery. Watson also positively identified defendant as one of the robbers, thereby corroborating the identification of Holley. As with Holley, Watson had the opportunity to observe defendant under favorable circumstances; she picked defendant from a pretrial photographic lineup; and she made no misidentification. Even though the trial court omitted two portions of N.C.P.I.—Crim. 104.90, we find that the charge, when viewed contextually, was sufficient on the issue of identification under the evidence in this case. The assignments of error brought forth in defendant's first argument are overruled.

[2] In his second argument, defendant contends the trial court erred in failing to exclude testimony regarding the out-of-court identifications of defendant where the court failed to make a finding of fact that the testimony was admissible.

While the finding and conclusions of the trial court did not include a specific finding that the out-of-court identification procedures "were not impermissibly suggestive," *Simmons v. United States*, 390 U.S. 377, 19 L.Ed. 2d 1247, 1253, 88 S.Ct. 967 (1968); *State v. Miller*, 281 N.C. 70, 77, 187 S.E. 2d 729 (1972), the court's findings were in sufficient detail to clearly establish the circumstances out of which the victims were able to identify defendant and the judge concluded that the victim's identification testimony was admissible. The evidence on *voir dire* clearly supports these findings and conclusion and they are therefore binding on us. *State v. McGuire*, 49 N.C. App. 70, 73, 270 S.E. 2d 526, *appeal dismissed*, 301 N.C. 529 (1980). This assignment is overruled.

[3] In his third argument, defendant contends the trial court erred by admitting into evidence, over objection, the photograph of defendant chosen by the prosecuting witnesses from a photographic array. As the initial basis for his argument, defend-

ant points to the trial court's failure to find as fact that evidence of the out-of-court identifications was admissible. For the reasons stated above in Argument II, defendant's initial argument is without merit. Defendant also argues that the trial court erred because there was no showing by the State that the photograph admitted into evidence was legally obtained, *citing State v. Accor and Moore*, 277 N.C. 65, 175 S.E. 2d 583 (1970). The State concedes that the record is silent on this matter. Both of the victims, Mr. Holley and Ms. Watson, testified at length and in detail as to transactions between them and Officer Charles relating to police file photos shown to them by Officer Charles and as to how they each picked defendant's photograph from those shown them. Officer Charles testified at length and in detail as to those transactions, describing how the victims selected defendant's photograph from those shown to them. Defendant did not enter an objection to any of that testimony. Officer Charles identified the photograph of defendant picked by the victims without objection by defendant. It was not until the State offered defendant's photograph that defendant objected. At this point the trial court overruled the objection and instructed the jury that they might consider the photograph only for the purpose of illustrating the testimony of Officer Charles and not for substantive purposes. Had defendant objected to the testimony about the photograph as it was given [*State v. Edwards*, 274 N.C. 431, 434, 163 S.E. 2d 767, 769 (1968)], the limiting instruction would not have removed the prejudice to defendant without a finding by the trial court that the photograph was legally obtained, as required under *State v. Accor and Moore, supra.* We hold, however, that defendant's general objection to in-court identification testimony did not raise the issue before the trial court of the admissibility of the photograph itself and that by allowing the witnesses to give testimony about the photograph without objection, defendant waived his right to object to the admissibility of the photograph itself. It is well established that the admission of testimony or other evidence over objection is harmless when testimony or other evidence of the same import has previously been admitted without objection. *State v. Silhan*, 302 N.C. 223, 247, 275 S.E. 2d 450, 469 (1981). In order for defendant to be entitled to the findings required under *Accor*, it was necessary for him to separately object to or move to suppress testimony *as to the photograph itself*, as was the case in *Accor*.

**[4]** Defendant next argues that the trial court erred by admitting his photograph into evidence because the photo was a mug shot which indicated to the jury that defendant had a prior record. On somewhat similar facts, our Supreme Court held in *State v. Fulcher*, 294 N.C. 503, 512-13, 243 S.E. 2d 338 (1978), that defendant in that case was not prejudiced by the introduction of mug shots. The Court stated that defendant, by his previous cross-examination of the State's witnesses, had brought into question, before the jury, the propriety of the pre-arrest identification procedures; thus, there was no prejudicial error in permitting the State to show the jury the photographs used in that process. As we noted earlier, defendant waived his right to object to the use of the photograph. The three assignments of error upon which defendant's third argument is based are overruled.

**[5]** Defendant brings forth several assignments of error in his fourth argument. Defendant contends that the prosecutor's cross-examination of defendant denied him a fair trial by a) implying that defendant's prior record should be considered as substantive evidence of guilt; b) calling upon defendant to comment on the credibility of the State's witnesses; c) implying that because defendant had little income he was guilty of the robbery; and d) improperly calling attention to defendant's failure to call a witness. An examination of the record shows that at none of the relevant points during cross-examination did defendant's counsel object. Defendant's failure to object waived his right to assert these matters on appeal. *State v. Silhan, supra.* None of the statements constituted so gross an impropriety that we need detail them here or correct the alleged abuse *ex mero motu. See State v. Locklear*, 294 N.C. 210, 215, 241 S.E. 2d 65 (1978). The assignments are overruled.

**[6]** In his fifth argument, defendant contends the trial court erred in sentencing him without first affording him an opportunity to make a statement. Under G.S. 15A-1334(b), a defendant "may make a statement in his own behalf" at his sentencing hearing. In the case *sub judice*, after the jury returned its verdict, the trial judge asked if there was "anything else you want to say." Although it is not clear to whom the question was directed, defendant's counsel replied, "Your Honor, I don't know what I could add that has not come out in the trial. The defendant says to me he was not involved in this." Defendant contends on appeal that it

is mandatory under G.S. 15A-1334(b) that defendant be allowed to speak, that it is not sufficient that his counsel spoke, and that the case must be remanded for re-sentencing.

As authority for his position, defendant cites 18 U.S.C., Rule 32(a)(1) and *United States v. Bebik*, 302 F. 2d 335 (4th Cir. 1962). Under Rule 32(a),

> Before imposing sentence the court *shall* afford counsel an opportunity to speak on behalf of the defendant *and shall address the defendant personally* and ask him if he wishes to make a statement in his own behalf . . . . (Emphasis added.)

In *Bibik*, the defendants were represented by counsel. Before he sentenced the defendants, the trial judge asked "Do you gentlemen have anything to say on the matter of punishment?", in reply to which counsel responded for their respective clients. Sentence was then imposed. The *Bebik* court, at p. 337, found that Rule 32(a) had not been complied with because "the right of allocution was not accorded to the defendant as the statute requires." The federal statute and G.S. 15A-1334(b) are not so similar as to require the same finding in the case *sub judice*. The federal statute clearly *requires* the trial judge to address both defendant's counsel and the defendant before imposing sentence. G.S. 15A-1334(b) imposes no such requirement, and we hold that it was sufficient that defendant's counsel spoke for him. Defendant's final assignment is overruled.

In the trial of defendant, we find

No error.

Judges MARTIN (Robert M.) and CLARK concur.