STATE OF NORTH CAROLINA v. MARCUS LAMONT CARMON

No. COA02-571

(Filed 4 March 2003)

**1. Search and Seizure— articulable suspicion for stop—clas-
sic drug transaction**

Officers' observations were sufficient for an articulable sus-
picion that defendant was engaged in criminal activity, and
defendant's motion to suppress cocaine seized during the subse-
quent stop was properly denied, where an officer saw defendant
receive a softball-size package from a man in a conspicuous car
at night, defendant then appeared to be nervous, and an officer
with extensive narcotics training and experience in observing
drug transactions testified that the incident looked like a classic
drug transaction.

**2. Confessions and Incriminating Statements— statement not coerced—confession and cooperation distinguished— threat to girlfriend insufficient**

A cocaine defendant's statement to officers was not coerced where defendant contended that the statement was made from fear that his girlfriend would be charged, but defendant was told that his girlfriend could be arrested, not that she would be, and defendant was offered the opportunity to assist police in their investigation of defendant's supplier to avoid his immediate arrest. Defendant was not induced to confess but to cooperate, and officers kept their promise and did not immediately arrest defendant even though he did not fully cooperate with them.

**3. Drugs— trafficking in cocaine—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss a charge of trafficking in cocaine where there was testimony that more than the requisite amount was seized from defendant and that he carried the drugs around a parking lot, entered his girlfriend's car with the drugs, and drove away with her before being stopped.

**4. Criminal Law— entrapment—delaying stop**

Officers did not entrap defendant into trafficking in cocaine by transportation by delaying the stop until defendant's girlfriend began to drive him away from the scene. Defendant carried the cocaine around a parking lot, entered his girlfriend's car, and began to leave; there is no evidence that officers induced defendant to commit an offense he was in the process of committing.

**5. Evidence— lay reference to paranoia—witness's meaning explained—not prejudicial**

There was no prejudice in a cocaine trafficking prosecution in the admission of an officer's characterization of defendant's behavior as paranoia. The officer was not qualified as an expert in psychology, but upon further questioning explained his meaning.

**6. Evidence— duplicative—harmless error**

Testimony about the amount of crack cocaine that could be produced from powder seized from defendant was duplicative but harmless because the State had already proven the amount needed to constitute cocaine trafficking through the testimony of an arresting officer.

**7. Evidence— expert testimony—reliance on tests performed by another**

There was no error in a cocaine trafficking prosecution in the allowance of testimony from an SBI agent concerning tests performed by another agent. The first agent (Wagoner) was accepted as an expert, and experts may base their opinions on tests performed by others if those tests are the type reasonably relied upon by experts in the field.

**8. Criminal Law— jury poll—request required**

It is a defendant's responsibility to request a jury poll, even if at an inopportune time, and there was no plain error in the trial court dismissing the jury without asking defendant if he wished to poll the jury.

**9. Sentencing— jury address by defendant—request required**

There was no error, plain or otherwise, in a cocaine trafficking prosecution where defendant did not individually address the jury prior to sentencing, but his attorney spoke on his behalf and defendant did not ask to speak himself and did not object after his attorney spoke. The court is not required to specifically address defendant nor to ask whether defendant wishes to make a statement after his attorney addresses the court. N.C.G.S. § 15A-1334(b).

Judge TIMMONS-GOODSON dissenting.

Appeal by defendant from judgments entered 12 December 2001 by Judge William C. Griffin, Jr. in Pitt County Superior Court. Heard in the Court of Appeals 22 January 2003.

*Attorney General Roy Cooper, by Assistant Attorney General William R. Miller, for the State.*

*Geoffrey W. Hosford for defendant-appellant.*

TYSON, Judge.

## I. Background

Greenville Police Officer Jay Madigan, ("Madigan"), drove his personal vehicle into the Food Lion parking lot on 6 April 2001, around 10:00 p.m. Madigan spotted a large, dark sport sedan with chrome rims parked in the parking lot. Madigan observed Marcus Lamont Carmon ("defendant") standing partially inside the sedan

with the passenger door opened, and saw the driver passing an object about the size of a softball to the defendant. Defendant held the package close to his chest, put the package in his jacket, and stepped away from the sedan. The sedan drove away as defendant walked toward the pay telephones located near the Food Lion entrance. Defendant appeared to survey the area, "looking all around and all around and all around." Defendant never searched for change or a calling card, or attempted to make a phone call.

Defendant walked towards the entrance of the Food Lion and continued to survey the area. Defendant walked to another vehicle in the parking lot and entered the passenger side. While observing defendant, Madigan used his cell phone to call the police communications center. He relayed his observations concerning defendant to E.L. Phipps ("Phipps") of the Greenville Police Department. Phipps relayed this to Officer William Holland ("Holland") of the Greenville Police Department. Madigan had received extensive narcotics training from the state and federal government.

Defendant's girlfriend purchased a bag of groceries, left the Food Lion store, and entered the driver's side of the vehicle in which defendant was seated. The girlfriend drove out of the parking lot and was stopped by Phipps and Holland. Holland approached the girlfriend, and Phipps moved toward defendant. Phipps explained to defendant what Madigan had observed. Defendant denied the allegations and consented to be searched. Phipps immediately reached to where Madigan had seen defendant place the package. Phipps felt the package and alerted Holland who reached through the car and retrieved two plastic bags wrapped around approximately 55.4 grams of powder containing cocaine.

Defendant was transported to the police station where he received his *Miranda* rights. Defendant provided a written statement to police. Defendant stated that he called "Flash" about 9:30 p.m., explained that he had a money problem, and that Flash told defendant to meet him at Food Lion. Flash arrived around 10:00 p.m. and gave defendant the cocaine. Defendant owed Flash two thousand dollars. Defendant also stated that his girlfriend went into the store to purchase beer and that she knew nothing about the drug exchange.

Defendant was not immediately arrested but was encouraged to cooperate in an investigation against Flash. Officer A.P. White requested that defendant be released to work for the investigation.

STATE v. CARMON

[156 N.C. App. 235 (2003)]

Defendant never assisted in apprehending Flash. Defendant was arrested on 22 June 2001 and charged with trafficking cocaine by possession, trafficking cocaine by transportation, and possession with intent to sell and deliver cocaine.

Defendant moved to suppress his statement on the grounds that the officers coerced him to cooperate by threatening to charge his girlfriend. The trial court found that this suggestion originated from defendant's own motives, and that defendant's statement was voluntarily and understandingly given.

Defendant also moved to suppress all evidence obtained from the stop of the vehicle. The trial court found that defendant consented to the search of his person and that Madigan's observations were sufficient to raise a reasonable suspicion and to warrant an investigatory stop.

A jury found defendant guilty of trafficking cocaine by possession, trafficking cocaine by transportation, and possession with intent to sell and deliver cocaine. Defendant was sentenced to consecutive terms of 35-42 months each for the trafficking offenses and 8-10 months for the possession, the possession sentence to run concurrently with the trafficking offenses. Defendant appeals.

## II. Issues

Defendant assigns eight errors. (1) The trial court erred in denying the motion to suppress evidence because Madigan only had an "inarticulable hunch" and not articulable suspicion that defendant was engaged in criminal activity and, (2) denying the motion to suppress defendant's statement because of police coercion. (3) The trial court erred when it denied defendant's motion to dismiss because of insufficient evidence that defendant committed the offense of trafficking by transportation. (4) The trial court erred when it allowed improper lay opinion testimony about defendant's behavior and (5) when it allowed the prosecutor to cross-examine SBI Agent Wagoner ("Wagoner") about the amount of crack cocaine that a person could generate from the evidence seized. (6) The trial court erred and violated defendant's confrontation rights by allowing Wagoner to testify about the results of tests performed by SBI Agent Suggs ("Suggs"). (7) The trial court committed plain error in denying defendant the opportunity to poll the jury after return of the verdicts and (8) in denying defendant the opportunity to address the court prior to imposing judgment.

### III. Denial of the Motion to Suppress

#### A. Evidence Seized

[1] Defendant contends that the trial court should have suppressed the evidence seized during the stop and search and argues that the officers did not have an articulable suspicion that defendant was involved in criminal activity. The test for articulable suspicion is based upon the "totality of the circumstances" and is very fact-specific. See In re Whitley, 122 N.C. App. 290, 468 S.E.2d 610, disc. rev. denied, 344 N.C. 437, 476 S.E.2d 132 (1996).

The trial court's findings of fact "are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." State v. Eason, 336 N.C. 730, 745, 445 S.E.2d 917, 926 (1994), cert. denied, 513 U.S. 1096, 130 L. Ed. 2d 661 (1995). The conclusions of law "must be legally correct, reflecting a correct application of applicable legal principles to the facts found." State v. Fernandez, 346 N.C. 1, 11, 484 S.E.2d 350, 357 (1997).

Officer Madigan observed defendant receive a softball-size package from a man in a conspicuous car at night. Madigan noticed what appeared to be nervous behavior by the defendant after the transaction.

Officer Madigan's observations of defendant's behavior and apparent nervousness, are appropriate considerations to determine whether reasonable suspicion existed. State v. McClendon, 350 N.C. 630, 638, 517 S.E.2d 128, 134 (1999), State v. Butler, 147 N.C. App. 1, 8, 556 S.E.2d 304, 309 (2001), aff'd, 356 N.C. 141, 567 S.E.2d 137 (2002), State v. Hendrickson, 124 N.C. App. 150, 155, 476 S.E.2d 389, 392-93 (1996), appeal dismissed, disc. rev. improvidently allowed, 346 N.C. 273, 488 S.E.2d 45 (1997). See also State v. Grimmett, 54 N.C. App. 494, 502, 284 S.E.2d 144, 150 (1981), disc. rev. denied, 305 N.C. 304, 290 S.E.2d 706 (1982) (holding nervousness alone does not provide reasonable suspicion). The nighttime exchange as well as Madigan's past experience in observing drug transactions as a police officer and extensive narcotic training are factors to determine whether the officer had a reasonable suspicion justifying the stop. See State v. Streeter, 283 N.C. 203, 208, 195 S.E.2d 502, 505 (1973) (holding time of day or night to be a relevant consideration in determining whether reasonable suspicion exists); Butler, 147 N.C. App. at 7, 556 S.E.2d at 308-09 ("[a] trained narcotics agent forms a reasonable, articulable suspicion that an individual is a drug courier on the

basis of identifiable behaviors that are usually associated with drug couriers as opposed to law abiding citizens." (internal quotations omitted)). Madigan testified that the incident looked like a "classic" drug transaction, the sort of hypothetical given in narcotics school. We find these observations to be sufficient for an "articulable suspicion." Defendant's assignment of error is overruled.

## B. Statement Given

**[2]** Defendant contends that the trial court erred in denying his motion to suppress the statement he gave to the officers. Defendant argues that his statement was coerced and out of fear that his girlfriend would be charged if he declined to talk.

Officer Holland admitted at trial that he told defendant that his girlfriend *could* be charged and her vehicle seized if defendant did not cooperate. Defendant was not specifically induced to confess but rather to "cooperate" with police. Defendant Carmon chose to make a statement as part of his cooperation, not in exchange for his freedom or leniency, but to avoid possible prosecution of his girlfriend. The alleged "threat" towards defendant's girlfriend's arrest was insufficient to render defendant's statement involuntary as the officers never stated that defendant's girlfriend *would* be charged but only indicated that it *could* happen.

Defendant was offered the opportunity to assist the police investigation of Flash to avoid immediate arrest. Defendant gave a statement but later refused to help in the investigation of Flash.

"[P]romises not to prosecute a defendant made during a police interrogation, in return for a defendant's confession, deserve the same scrutiny under contract and due process principles as promises made in the context of plea bargains." *State v. Sturgill*, 121 N.C. App. 629, 637, 469 S.E.2d 557, 562 (1996). The facts in *Sturgill* are distinguishable. At bar, the officers promised not to prosecute defendant if defendant would assist in their investigation of Flash. Unlike *Sturgill*, the officers here kept their promise and did not immediately arrest defendant even though defendant did not fully cooperate with them in assisting in the investigation.

No other alleged threats were made to defendant regarding his cooperation. No threats were made specifically to induce a statement. The officers promised not to charge defendant if he assisted in the investigation of Flash. Because defendant broke this prom-

ise, he was charged. The trial court's findings of fact are supported by substantial evidence. The court's conclusions of law that defendant was not coerced into making a statement and that his confession was given voluntarily and freely after having waived his *Miranda* rights are supported by those facts. This assignment of error is overruled.

## IV. Denial of Motion to Dismiss

[3] Defendant contends that the trial court erred in denying his motion to dismiss, and asserts that the State produced insufficient evidence that defendant trafficked in drugs by transportation. Defendant argues that the police delayed stopping defendant in order to entrap him into the offense of trafficking by transportation.

The trial court must consider all of the evidence admitted in the light most favorable to the State and determine whether substantial evidence exists of defendant's commission of the crime charged prior to ruling on a motion to dismiss. *State v. Earnhardt*, 307 N.C. 62, 65-67, 296 S.E.2d 649, 651-53 (1982). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* at 66, 296 S.E.2d at 652 (quoting *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980)).

Trafficking refers to large scale distribution of controlled substances. *See State v. McCoy*, 105 N.C. App. 686, 689, 414 S.E.2d 392, 394 (1992). The offense of trafficking by transportation includes any actual carrying about or movement of a particular quantity of drugs from one place to another. *See State v. Outlaw*, 96 N.C. App. 192, 196, 385 S.E.2d 165, 168 (1989), *disc. rev. denied*, 326 N.C. 266, 389 S.E.2d 118-19 (1990) (citing *Cunard Steamship Co. v. Mellon*, 262 U.S. 100, 122, 67 L. Ed. 894, 901 (1922)). In determining whether a "substantial movement" has occurred "*all* the circumstances surrounding the movement and not simply the fact of a physical movement of the contraband from one spot to another" should be considered. *State v. Greenidge*, 102 N.C. App. 447, 451, 402 S.E.2d 639, 641 (1991). Here, defendant obtained the cocaine from Flash's car, put the cocaine in his jacket, walked over to the pay telephone, walked toward and entered his girlfriend's car, and rode away with her.

This Court previously upheld a defendant's conviction of trafficking by transportation where the defendant removed drugs from his dwelling, placed them in his truck and backed down his driveway. *Outlaw*, 96 N.C. App. 192, 385 S.E.2d 165.

Wagoner testified that the seized cocaine weighed 55.4 grams. The threshold amount for a charge of trafficking is 28 grams. N.C.G.S. § 90-95(h)(3)(a) (2001). The State presented substantial evidence of each element of the crime charged to preclude a motion to dismiss.

[4] We also find defendant's entrapment defense inapplicable to the facts. Entrapment is "the inducement of one to commit a crime not contemplated by him, for the mere purpose of instituting a criminal prosecution against him." *State v. Stanley*, 288 N.C. 19, 27, 215 S.E.2d 589, 594 (1975). Trafficking by transportation requires a real carrying about or movement, but this movement can be slight. *See State v. Manning*, 139 N.C. App. 454, 468, 534 S.E.2d 219, 228 (2000), *aff'd*, 353 N.C. 449, 545 S.E.2d 211 (2001). Defendant carried the cocaine around the parking lot and planned to leave the parking lot with his girlfriend. There is no evidence substantiating his claim that the officers induced him to commit an offense that he was already in the process of committing.

## V. Improper Lay Testimony

[5] Defendant assigns error to Madigan's characterization of defendant's behavior as "paranoia." Madigan testified that defendant's behavior in the parking lot was "one of the most extreme cases of paranoia that I've seen in a long time." Defendant objected, and the court responded and inquired: "Well, I think that's a shorthand statement. Overruled. You're [sic] don't literally mean paranoia; you mean it in a descriptive way?" Madigan explained his statement to include more specific observations of how defendant looked all around the area, circling 360 degrees, several times.

N.C. Rule of Evidence 701 limits lay opinion testimony to "those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of fact in issue." Madigan was not qualified as an expert in the field of psychology, and should not have testified to defendant's "paranoia."

After being questioned by the trial court, Madigan explained to the jury exactly what he meant by the term, "paranoia." We find any error to be harmless.

## VI. Testimony of Wagoner

Defendant assigns error to the trial court's allowance of (A) the prosecutor's cross-examination of Wagoner as to the amount of crack

cocaine that a person could generate from the evidence seized and (B) Wagoner's testimony about Suggs' testing of the cocaine.

### A. Possible Amounts Generated from Seized Evidence

[6] Defendant contends that Wagoner's testimony concerning how much crack cocaine could be produced from the powder seized was irrelevant and unfairly prejudicial.

This evidence was duplicative. The State had already proven, through Officer Holland's testimony, the element of the amount needed to constitute trafficking cocaine and the quantity of cocaine seized from defendant. Any error in allowing duplicative testimony on the quantity of cocaine seized is harmless.

### B. Testimony about the Testing of Another Officer

[7] Defendant assigns error to the trial court's allowance of testimony by Wagoner concerning testing performed by Suggs. Defendant alleges this error breached his constitutional right to confront and cross examine any witness. Wagoner was tendered and accepted without objection as an expert on the testing of controlled substances. His opinion relied on the results of the tests performed by Suggs.

Our Supreme Court has previously held that an expert may base his opinion on tests performed by others if those tests are the type reasonably relied upon by experts in the field. *State v. Fair*, 354 N.C. 131, 162, 557 S.E.2d. 500, 522 (2001), *cert. denied*, —— U.S. ——, 153 L. Ed. 2d 162 (2002). The opportunity to fully cross-examine an expert insures that the defendant's right of confrontation guaranteed by the Sixth Amendment is not violated. *State v. Huffstetler*, 312 N.C. 92, 108, 322 S.E.2d 110, 120-21 (1984), *cert. denied*, 471 U.S. 1009, 85 L. Ed. 2d 169 (1985). *See also State v. Daughtry*, 340 N.C. 488, 511, 459 S.E.2d 747, 758-59 (1995), *cert. denied*, 516 U.S. 1079, 133 L. Ed. 2d 739 (1996). Wagoner based his opinion on data reasonably relied upon by experts in his field. Defendant's assignment of error is overruled.

### VII. Plain Error Review

Defendant assigns plain error to the trial court's denial of an opportunity to poll the jury and an opportunity to address the court prior to imposition of judgment. Plain error is error that is "fundamental", "seriously affect[s] the fairness, integrity or public reputa-

tion of judicial proceedings", or "had a probable impact on the jury's finding that the defendant was guilty." *State v. Moore*, 311 N.C. 442, 445, 319 S.E.2d 150, 152 (1984). Plain error analysis is appropriate in exceptional cases involving the improper admission of evidence or jury instructions. *State v. Greene*, 351 N.C. 562, 566, 528 S.E.2d 575, 578, *cert. denied*, 531 U.S. 1041, 148 L. Ed. 2d 543 (2000).

## A. Polling of the Jury

[8] Defendant relies upon this Court's recent decision in *State v. Holadia*, 149 N.C. App. 248, 561 S.E.2d 514, *disc. rev. denied*, 355 N.C. 497, 562 S.E.2d 432 (2002). In *Holadia*, a consolidated trial of two defendants, defendant Cooper requested the jury be polled. *Id.* at 252, 561 S.E.2d at 518. The court polled the jury collectively. *Id.* at 253, 561 S.E.2d at 518. Defendant Cooper was granted a new trial because the jury should have been polled individually according to the statutory mandate in N.C.G.S. § 15A-1238. *Id.* at 263-63, 561 S.E.2d at 524.

Here, defendant failed to request that the jury be polled. He asserts that the trial court did not provide him with that opportunity by dismissing the jurors after the verdict was read. We hold that it was not plain error for the trial court to dismiss the jury without asking defendant if he wished to poll the jury. It was the responsibility of defendant to make this request, even if at an inopportune time.

## B. Denial of Statement Prior to Sentencing

[9] Defendant assigns plain error to the trial court's denial of an opportunity for defendant to individually address the court prior to sentencing.

Defendant's attorney spoke on his behalf prior to sentencing. Defendant did not request to individually address the court nor lodge any objection to the trial court after his attorney spoke on his behalf. This is sufficient to satisfy the requirement that defendant have the opportunity to speak in his own behalf to conform with N.C.G.S. § 15A-1334(b). *State v. Martin*, 53 N.C. App. 297, 305, 280 S.E.2d 775, 780 (1981). Defendant's attorney has apparent authority to speak for the defendant as his agent. The trial court is not required to specifically address the defendant nor to ask whether defendant wishes to make a statement after his attorney has addressed the court on his behalf. *Id.* We find no error, plain or otherwise, in the trial court's procedure.

## VIII.  Conclusion

We affirm the trial court's denial of defendant's motions to suppress and dismiss. We find no prejudicial error and overrule the assignments of error that defendant asserted and argued.

No prejudicial error.

Judge LEVINSON concurs.

Judge TIMMONS-GOODSON dissents.

TIMMONS-GOODSON, Judge, dissenting.

Because I disagree with the majority's conclusion that the trial court properly admitted defendant's statement into evidence, I respectfully dissent.

The Fourteenth Amendment of the United States Constitution requires that, in order to be admissible, a defendant's confession must be voluntary and " 'the product of an essentially free and unconstrained choice by its maker.' " *State v. Hardy*, 339 N.C. 207, 222, 451 S.E.2d 600, 608 (1994) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225, 36 L. Ed. 2d 854, 862 (1973)). In determining whether a statement is voluntary, the court considers such factors as

> whether defendant was in custody, whether he was deceived, whether his Miranda rights were honored, whether he was held incommunicado, the length of the interrogation, whether there were physical threats or shows of violence, whether promises were made to obtain the confession, the familiarity of the declarant with the criminal justice system, and the mental condition of the declarant.

*Id.* The trial court's findings of fact regarding the voluntariness of a defendant's statement are conclusive on appeal if they are supported by competent evidence in the record. *See State v. Gray*, 268 N.C. 69, 78-79, 150 S.E.2d 1, 8 (1966), *cert. denied*, 386 U.S. 911, 17 L. Ed. 2d 784 (1967). The determination, however, of what facts amount to such threats or promises as to make a confession involuntary and inadmissible in evidence is a question of law, and is fully reviewable by the appellate court. *See State v. Fuqua*, 269 N.C. 223, 226-27, 152 S.E.2d 68, 71 (1967). " 'So, whether there be *any evidence* tending to show that confessions were not made voluntarily, is a question

of law.' " *Id.* (quoting *State v. Andrew,* 61 N.C. 205, 206 (1867) (Phil. Law)). This Court must therefore decide as a matter of law whether the circumstances of the instant case rendered the confession inadmissible.

In considering whether a confession is free and voluntary, our Supreme Court in the landmark case of *State v. Roberts,* 12 N.C. 259 (1827) (1 Dev.), stated that

> Confessions are either voluntary or involuntary. They are called voluntary when made neither under the influence of hope or fear, but are attributable to that love of truth which predominates in the breast of every man, not operated upon by other motives more powerful with him, and which, it is said, in the perfectly good man cannot be countervailed. These confessions are the highest evidences of truth, even in cases affecting life. But it is said, and said with truth, that confessions induced by hope or extorted by fear are, of all kinds of evidence, the least to be relied on, and are therefore entirely to be rejected.

*Id.* at 261-62. These principles enunciated by the *Roberts* Court "long before the insertion of the Fourteenth Amendment into the Constitution of the United States" have been consistently recognized and followed by our courts. *Gray,* 268 N.C. at 77, 150 S.E.2d at 7-8; *Fuqua,* 269 N.C. at 227, 152 S.E.2d at 71 (noting that " 'a confession obtained by the slightest emotions of hope or fear ought to be rejected' " (quoting *Roberts,* 12 N.C. at 260)). Accordingly, our Supreme Court has found inadmissible a statement induced by an officer's promise to testify that the defendant was cooperative in confessing, *see Fuqua,* 269 N.C. at 228, 152 S.E.2d at 72, a statement induced by assistance on pending charges and promises of assistance on potential charges arising out of the confession, *see State v. Woodruff,* 259 N.C. 333, 338, 130 S.E.2d 641, 645 (1963), a statement influenced by a suggestion that the defendant might be charged with accessory to murder rather than murder if he confessed, *see State v. Fox,* 274 N.C. 277, 293, 163 S.E.2d 492, 503 (1968), and a statement given after the defendant was told that any confession he made could not be used against him since he was in custody, and that if he confessed "it would be more to his credit hereafter." *Roberts,* 12 N.C. at 259. *See also Gray,* 268 N.C. at 77, 150 S.E.2d at 7 (noting that a confession may not be admitted where induced by the police through the slightest emotions of hope or fear); *State v. Livingston,* 202 N.C. 809, 810, 164 S.E. 337, 337 (1932) (stating that "a confession wrung from

the mind by the flattery of hope, or by the torture of fear, comes in such questionable shape as to merit no consideration); *State v. Campbell*, 133 N.C. App. 531, 537, 515 S.E.2d 732, 737 (1999) (noting that "[i]ncriminating statements obtained by the influence of hope or fear are involuntary and thus inadmissible"), *disc. review denied*, 351 N.C. 111, 540 S.E.2d 370 (1999).

In the instant case, the trial court found that law enforcement officers neither threatened nor made any promises to defendant in obtaining his confession, except for those promises "regarding his cooperating in helping the police to apprehend the person from whom he had obtained the cocaine." These findings and conclusions contradict, however, the evidence presented at trial. As recognized in the majority opinion, Officer Holland acknowledged that he informed defendant that his girlfriend could be charged with a crime and her car seized if defendant did not cooperate. Officer Holland stated that the possibility of the arrest of defendant's girlfriend was "the topic of discussion through the whole process" of obtaining defendant's statement. Officers also used the threat against defendant's girlfriend in inducing his promise to assist the officers in their investigation of "Flash."

Like the *Fuqua* Court, I conclude that the evidence presented at the instant trial tends to show that "[t]he total circumstances surrounding the defendant's confession impels the conclusion that there was aroused in him an 'emotion of hope [or fear]' so as to render the confession involuntary." *Fuqua*, 269 N.C. at 228, 152 S.E.2d at 72. Because the confession was involuntary and therefore inadmissible, I would hold that the trial court erred in admitting this evidence.

"Error committed at trial infringing upon one's constitutional rights is presumed to be prejudicial and entitles him to a new trial unless the error was harmless beyond a reasonable doubt." *State v. Russell*, 92 N.C. App. 639, 644, 376 S.E.2d 458, 461 (1989); N.C. Gen. Stat. § 15A-1443(b) (2001). The burden of showing harmless error is on the State. *See* N.C. Gen. Stat. § 15A-1443(b). Such error is only harmless where it can be shown that the improper admission of the evidence had no reasonable possibility of affecting the verdict of the jury. *See State v. Easterling*, 119 N.C. App. 22, 38, 457 S.E.2d 913, 922, *disc. review denied*, 341 N.C. 422, 461 S.E.2d 762 (1995). In his statement to law enforcement officers, defendant confessed to meeting a known drug dealer and receiving substantial amounts of cocaine from him. Because I conclude that there is a reasonable possibility

that defendant's statement influenced the jury verdict against him, I would hold that the trial court's improper admission of this evidence entitles defendant to a new trial.