STATE OF NORTH CAROLINA v. MICHAEL CHRISTOPHER THOMPSON

No. COA00-1509

(Filed 19 March 2002)

**1. Appeal and Error— record on appeal—tapes, transcripts of statements, and photographs missing—trial transcript sufficient**

The transcript of an armed robbery trial was sufficient for appellate review of questions concerning defendant's confession, an accomplice's confession, and photographs alleged to be prejudicial where the Clerk of Superior Court could not locate the audiotapes and transcripts of the confessions or the photographs.

**2. Confessions and Incriminating Statements— Miranda warnings—not required—interrogation not custodial**

Miranda warnings were not required where an armed robbery suspect voluntarily agreed to speak with a detective, defendant was never searched or handcuffed, he was informed at least 3 times that he was not under arrest and was free to leave, the interview room remained unlocked during the course of his questioning, and he left the station without being arrested.

**3. Confessions and Incriminating Statements— assertion that defendant would not be arrested that day—statement voluntary**

An armed robbery defendant's confession was voluntary despite his assertion that it was induced by promises; a detective's repeated assertions that defendant would not be arrested that day regardless of what he said did not lead defendant to believe that the criminal justice system would treat him more favorably if he confessed to the robbery, especially in light of his familiarity with the criminal justice system.

**4. Confessions and Incriminating Statements— mental condition—totality of circumstances—statement voluntary**

An armed robbery defendant's mental condition did not make his confession involuntary under the totality of the circumstances where he had been diagnosed as a Willie M. child at age 6 and received Social Security benefits as a result of his condition.

**5. Criminal Law— acting in concert—instruction**

The trial court did not err in its acting in concert instruction in an armed robbery prosecution where the instruction made

STATE v. THOMPSON

[149 N.C. App. 276 (2002)]

clear that defendant could only be found guilty of robbery with a firearm if he acted with a common purpose to commit robbery; the instruction focused on a single crime; and, even though the instruction permitted defendant to be convicted without proof that he shared a common purpose to use a firearm, N.C.G.S. § 14-87 merely increases the punishment imposed for common law robbery rather than creating a new crime. Because the instructions complied with *State v. Blankenship*, 337 N.C. 543, it was not necessary to address the ex post facto issue raised by *State v. Barnes*, 345 N.C. 543.

**6. Sentencing— mitigating factor—voluntary acknowledgment of wrongdoing**

The trial court did not err in an armed robbery prosecution by not finding as a mitigating factor that defendant had voluntarily acknowledged wrongdoing at an early stage where defendant challenged the voluntariness of his statement at trial. The question of whether this impermissibly burdened his constitutional rights was not raised at trial and thus was not considered on appeal.

On writ of certiorari to review judgment and commitment entered 20 February 1997 by Judge Clarence W. Carter in Forsyth County Superior Court. Heard in the Court of Appeals 27 November 2001.

*Attorney General Roy Cooper, by Assistant Attorney General Clinton C. Hicks, for the State.*

*Everett & Hite, L.L.P., by Kimberly A. Swank, for defendant-appellant.*

CAMPBELL, Judge.

Defendant was indicted for robbery with a firearm in violation of N.C. Gen. Stat. § 14-87. Defendant was tried jointly with co-defendant Michael Tyrone Davis at the 17 February 1997 Criminal Session of Forsyth County Superior Court. On 20 February 1997, Defendant was found guilty and was sentenced to a minimum of 146 months and a maximum of 185 months in prison.

On 13 October 1999, this Court granted Defendant's petition for writ of certiorari in order to allow review of his conviction. On 20 December 2000, the record on appeal was filed, in which Defendant set forth thirteen assignments of error. On 19 February 2001,

Defendant's brief was filed, in which he presented argument in support of seven of his assignments of error. In addition, Defendant filed a motion for appropriate relief in this Court pursuant to N.C. Gen. Stat. § 15A-1418.

## I. Motion for Appropriate Relief

[1] We first address those issues raised by Defendant's motion for appropriate relief that are not addressed in Defendant's brief. With his motion for appropriate relief, Defendant submitted an affidavit signed by Julia E. King, Senior Deputy Clerk of Superior Court for Forsyth County, by which King swore that the Forsyth County Clerk of Superior Court "has conducted an exhaustive search to locate the exhibits admitted into evidence at the trial of [Defendant]," "has not been able to locate the exhibits from the trial," and "has no reasonable expectation of locating the exhibits."

Included among the trial exhibits that the Clerk of Superior Court was unable to locate are the original audiotape and transcript of Defendant's confession to Detective D. R. Williams ("Detective Williams"). The audiotape recording of Defendant's confession was played for the jury and the transcript of the confession was published to the jury. However, the substance of Defendant's confession was not recorded by the court reporter and is, therefore, not part of the trial transcript.

Defendant argues in his brief that the trial court committed plain error in admitting into evidence Defendant's confession because (1) Defendant was not advised of his *Miranda* rights prior to being questioned, and (2) Defendant's confession was induced by a promise that he would not be arrested, rendering it involuntary. In his motion for appropriate relief, Defendant contends that effective and meaningful appellate review of the admissibility of Defendant's confession is not possible in the absence of the audiotape recording and transcript that was submitted into evidence. However, the trial transcript adequately sets forth the conditions and details surrounding Defendant's questioning by Detective Williams, as well as sufficient independent evidence tending to establish Defendant's guilt. Therefore, we find the record before us sufficient to allow meaningful appellate review of Defendant's contention that the trial court committed plain error in admitting his confession into evidence. Defendant's arguments related to the admissibility of his confession are addressed later in this opinion.

STATE v. THOMPSON

[149 N.C. App. 276 (2002)]

Defendant further contends in his motion for appropriate relief that he has been precluded from adequately presenting argument in support of two of his assignments of error due to the loss of other exhibits that were admitted into evidence at his trial. In his second assignment of error, Defendant asserts that the trial court erred in admitting over Defendant's objection certain photographs on the ground that the probative value of the photographs was substantially outweighed by their unfair prejudicial effect. These allegedly inadmissible photographs do not appear in the record. However, having reviewed the trial transcript, we conclude that it provides sufficient illustration of the content of these allegedly inadmissible photographs to allow Defendant to present an adequate argument on appeal and to allow this Court to conduct a meaningful appellate review of such argument. Thus, we disagree with Defendant's contention to the contrary.

Defendant also assigned plain error to the trial court's admission of the confession of Sharon Jackson ("Jackson"), who was convicted for her role in the robbery prior to the start of Defendant's trial. Jackson's confession, which implicated Defendant in the robbery, was presented to the jury and admitted into evidence through an audiotape recording and transcript. However, as with Defendant's confession, Jackson's confession was not transcribed by the court reporter, and the audiotape recording and transcript have not been found by the Clerk of Superior Court. Thus, Defendant contends that without the audiotape and transcript this Court cannot effectively review the admissibility of Jackson's confession. However, the trial transcript shows that on direct examination Jackson testified that Defendant was not involved in the robbery. On cross-examination, counsel for the State questioned Jackson about her confession implicating Defendant in the robbery, and thereafter the audiotape and transcript of Jackson's confession were admitted into evidence without objection. Although Jackson's confession does not appear in the record, the trial transcript is sufficient to show that it was offered into evidence as a prior inconsistent statement to impeach the testimony of Jackson. Therefore, we find the record adequate to allow meaningful appellate review of Defendant's assignment of error.

For the foregoing reasons, Defendant's motion for appropriate relief is hereby denied. We turn to the arguments presented in Defendant's brief.

STATE v. THOMPSON

[149 N.C. App. 276 (2002)]

## II. Defendant's Appeal

**[2]** We first note that those assignments of error that Defendant has not supported with argument or authority are deemed abandoned pursuant to N.C. R. App. P. 28(b)(5).

Defendant argues that the trial court committed plain error by admitting his confession into evidence. Specifically, Defendant contends that his confession was the unlawful product of a custodial interrogation conducted without the benefit of *Miranda* warnings and was involuntarily induced by a promise that Defendant would not be arrested. We disagree.

It is well established that *Miranda* warnings are required only when a defendant is subjected to custodial interrogation. *See, e.g., State v. Gaines*, 345 N.C. 647, 661, 483 S.E.2d 396, 404 (1997). In *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966), the United States Supreme Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or deprived of his freedom of action in any significant way." *Id.* at 444, 16 L. Ed. 2d at 706. "The United States Supreme Court has recognized that *Miranda* warnings are not required simply because the questioning takes place in the police station or other "coercive environment" or because the questioned person is one whom the police suspect of criminal activity." *State v. Campbell*, 133 N.C. App. 531, 536, 515 S.E.2d 732, 736 (1999) (citing *Oregon v. Mathiason*, 429 U.S. 492, 495, 50 L. Ed. 2d 714, 719 (1977) (per curiam)). "[T]he appropriate inquiry in determining whether a defendant is "in custody" for purposes of *Miranda* is, based on the totality of the circumstances, whether there was a "formal arrest or a restraint on freedom of movement of the degree associated with a formal arrest." " *State v. Buchanan*, 353 N.C. 332, 339, 543 S.E.2d 823, 828 (2001) (quotations in original).

In the instant case, the record indicates that Detective Williams called Defendant's residence and left a message for Defendant to come down to the police station. Defendant was escorted to the station on 17 January 1996 by the co-defendant's probation officer. Defendant testified that he went to the station that day for a scheduled appointment with his probation officer. At the station, Defendant agreed to speak with Detective Williams about the robbery. At no time was Defendant searched, handcuffed, or restricted in his movement. Prior to escorting Defendant back to the interview room, Detective Williams informed him and the co-defendant that they were not under

arrest and were free to leave at any time. Detective Williams then walked Defendant back to the interview room. Before entering the interview room, Detective Williams again told Defendant that he was not under arrest, he would not be arrested that day regardless of what he said, and he was free to terminate the interview at any time. Detective Williams also offered Defendant food and water, and asked if Defendant needed to use the restroom. After entering the interview room, Detective Williams again told Defendant that he was not under arrest and was free to leave at any time. The interview room remained unlocked throughout the course of Defendant's interview, and Defendant left the station following the interview without being arrested.

Based on the totality of the circumstances, we conclude that Defendant was not subjected to a formal arrest or a restraint on his freedom of movement of the degree associated with a formal arrest. The record shows that Defendant voluntarily agreed to speak with Detective Williams about the robbery; Defendant was never searched or handcuffed; Defendant was informed at least three times that he was not under arrest and was free to leave; the interview room remained unlocked during the course of Defendant's questioning; and Defendant left the station without being arrested. Based on these circumstances, we conclude that *Miranda* warnings were not required. We now consider whether Defendant's confession was voluntary.

**[3]** The Fourteenth Amendment requires that a defendant's confession be voluntary and " 'the product of an essentially free and unconstrained choice by its maker[,]' " *State v. Hardy*, 339 N.C. 207, 222, 451 S.E.2d 600, 608 (1994) (quoting *Schneckcloth v. Bustamonte*, 412 U.S. 218, 225, 36 L. Ed. 2d 854, 862 (1973) (citation omitted)), in order to be admissible. Factors to be considered in a determination of voluntariness are

> whether defendant was in custody, whether he was deceived, whether his Miranda rights were honored, whether he was held incommunicado, the length of the interrogation, whether there were physical threats or shows of violence, whether promises were made to obtain the confession, the familiarity of the declarant with the criminal justice system, and the mental condition of the declarant.

*Id.*

In the instant case, the evidence shows that Defendant arrived at the police station for an appointment with his probation officer and agreed to speak with Detective Williams about the robbery. Defendant was not in custody and therefore *Miranda* warnings were not required. Defendant was not held incommunicado, the interrogation did not last an unreasonable length of time, nor were there oral or physical threats or shows of violence made against Defendant. Further, the record indicates that Defendant was extremely familiar with the criminal justice system, having been convicted seven times prior to his questioning on 17 January 1996.

Nonetheless, Defendant contends that his confession to Detective Williams was improperly induced by promises that he would not be arrested regardless of what he said. "Incriminating statements obtained by the influence of hope or fear are involuntary and thus inadmissible." *Campbell*, 133 N.C. App. at 537, 515 S.E.2d at 737. Accordingly, our Supreme Court has found inadmissible a statement induced by an officer's promise to testify that the defendant was cooperative in confessing, *State v. Fuqua*, 269 N.C. 223, 152 S.E.2d 68 (1967), a statement induced by assistance on pending charges and promises of assistance on potential charges arising out of the confession, *State v. Woodruff*, 259 N.C. 333, 130 S.E.2d 641 (1963), a statement influenced by a suggestion that the defendant might be charged with accessory to murder rather than murder if he confessed, *State v. Fox*, 274 N.C. 277, 163 S.E.2d 492 (1968), and a statement given after the defendant was told that any confession he made could not be used against him since he was in custody, and that if he confessed "it would be more to his credit hereafter." *State v. Roberts*, 12 N.C. 259 (1827).

Unlike these earlier cases, we do not find that Detective Williams' repeated assertions that Defendant would not be arrested that day regardless of what he said, led Defendant to believe that the criminal justice system would treat him more favorably if he confessed to the robbery. This is especially true in light of Defendant's familiarity with the criminal justice system and the fact that he had doubtless been questioned by law enforcement officers on numerous occasions.

[4] Defendant also argues that his diminished mental capacity further supports his contention that his confession was involuntary. Defendant's mother testified that he had been diagnosed as a Willie M. child at the age of six and received Social Security disability benefits as a result of his mental condition. While we note that Defendant's

**STATE v. THOMPSON**

[149 N.C. App. 276 (2002)]

mental condition and limited mental capacity were both found as mitigating factors by the trial court in sentencing, we do not find under the totality of the circumstances that Defendant's mental condition made his confession involuntary. Thus, we conclude that Defendant's confession was "the product of an essentially free and unconstrained choice by its maker." *Schneckcloth v. Bustamonte*, 412 U.S. 218, 225, 36 L. Ed. 2d 854, 862 (1973) (citation omitted). Having concluded that Defendant was not in custody when his confession was given and that his confession was voluntary, we find no error in the trial court's admission of Defendant's confession. Accordingly, defendant has failed to show plain error.

**[5]** Defendant next argues that the trial court erred in its instructions on the doctrine of acting in concert by instructing the jury in a manner that permitted the jury to convict Defendant of armed robbery without proof that Defendant had the specific intent to commit armed robbery. We disagree with Defendant and conclude that there was no error in the trial court's instructions.

Defendant relies on *State v. Straing*, 342 N.C. 623, 466 S.E.2d 278 (1996), and *State v. Blankenship*, 337 N.C. 543, 447 S.E.2d 727 (1994), to support his contention that the acting in concert instructions given by the trial court were reversible error. However, in *State v. Barnes*, 345 N.C. 184, 481 S.E.2d 44 (1997), our Supreme Court overruled *Blankenship* and *Straing* and restored the law of acting in concert to its prior standard, which the Court stated as follows:

> [I]f "two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose . . . or as a natural or probable consequence thereof."

*Id.* at 233, 481 S.E.2d at 71 (quoting *State v. Erlewine*, 328 N.C. 626, 637, 403 S.E.2d 280, 286 (1991) (citation omitted)).

Although the standard reaffirmed in *Barnes* lowered the State's burden, the Court noted that no *ex post facto* problem was created because the crimes in *Barnes* were committed and the defendants were sentenced prior to the certification of the *Blankenship* opinion on 29 September 1994. *Id.* at 234, 481 S.E.2d at 72.

Here, the crime at issue was committed on 4 January 1996 and Defendant was convicted and sentenced on 20 February 1997. The

certification date for the *Barnes* decision was 3 March 1997. Thus, unlike the situation in *Barnes*, the law in existence when the crimes were committed and when Defendant was sentenced was the law as applied in *Blankenship*. This scenario raises the issue of whether application of *Barnes* to this case would violate the constitutional prohibition on application of *ex post facto* laws. However, since we find that the jury instructions given by the trial court comport with the law set forth in *Blankenship* and its progeny, it is not necessary to address the *ex post facto* issue. *See State v. Woods*, 126 N.C. App. 581, 586, 486 S.E.2d 255, 258 (1997).

In *Blankenship*, the Court found error in acting in concert instructions which permitted conviction of a defendant for a specific intent crime, premeditated and deliberated murder, without a jury finding that he had specific intent to kill. *Blankenship*, 337 N.C. at 557, 447 S.E.2d at 736. In *Blankenship*, the Court stated the acting in concert doctrine as follows:

> Under this doctrine [acting in concert], where a single crime is involved, one may be found guilty of committing the crime if he is at the scene with another with whom he shares a common plan to commit the crime, although the other person does all the acts necessary to effect commission of the crime. . . . [W]here multiple crimes are involved, when two or more persons act together in pursuit of a common plan, all are guilty only of those crimes included within the common plan committed by any one of the perpetrators. . . . [O]ne may not be criminally responsible under the theory of acting in concert for a crime like premeditated and deliberated murder, which requires a specific intent, unless he is shown to have the requisite specific intent. The specific intent may be proved by evidence tending to show that the specific intent crime was a part of the common plan.

*Id.* at 557-58, 447 S.E.2d at 736 (internal citations omitted).

Applying this formulation of the acting in concert doctrine, the Court in *Blankenship* found error in the following instruction by the trial court:

> For a person to be guilty of a crime, it is not necessary that he, himself, do all the acts necessary to constitute the crime. If a defendant is present, with one or more persons, and acts together with a common purpose to commit murder, *or* to commit kidnapping, each of them is held responsible for the acts of the others,

done in the commission of that murder *or* kidnapping, as well as any other crime committed by the other in furtherance of that common design.

*Id.* at 555, 447 S.E.2d at 734-35 (emphasis in original). The Court concluded that this instruction permitted the defendant to be convicted of premeditated and deliberated murder, which requires a specific intent to kill, when the only common purpose shared between the defendant and the person with whom he was acting in concert was to commit kidnapping. *Id.* at 557, 447 S.E.2d at 736. "In other words, the instructions permit defendant to be convicted of premeditated and deliberated murder when he himself did not inflict the fatal wounds, did not share a common purpose to murder with the one who did inflict the fatal wounds and had no specific intent to kill the victims when the fatal wounds were inflicted." *Id.*

In *Straing*, the Supreme Court applied the *Blankenship* acting in concert standard in finding error in the following instruction:

Now, there's a principle in our law known as acting in concert. For a person to be guilty of a crime it is not necessary that he himself do all of the acts necessary to constitute the crime. If two or more persons act together with a common purpose to commit a crime, each of them is not only guilty as a principle [sic] if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose or as a natural or probable consequence of the common purpose.

*Straing*, 342 N.C. at 625, 466 S.E.2d at 279 (alteration in original). The Court concluded that this jury instruction erroneously allowed the jury to convict the defendant of premeditated and deliberated murder, robbery with a dangerous weapon, and first-degree kidnapping, all of which are specific intent crimes, without requiring the State to establish that the defendant had the specific intent to commit those crimes. *Id.* at 627, 466 S.E.2d at 281.

Applying the law set forth in *Blankenship* and *Straing* to the instructions given in the instant case, we conclude that the trial court did not err in its instructions below. The trial court gave the following general instruction on acting in concert:

[F]or a person to be guilty of a crime, it is not necessary that he do all the acts necessary to constitute the crime. If two or more persons act together with the common purpose to rob

another, regardless of whether that purpose is to rob with or without a firearm, but robbery does involve—does involve at a minimum . . . the taking of property from another by violence or putting a person in fear with or without a firearm and . . . if they act together with a common purpose to commit a robbery, two or more persons act with that common purpose and these two or more persons are actually present at the time the robbery is committed, then each of them is held responsible for the acts of the others done in the commission of the robbery.

The trial court then summarized what the jury must find to convict Defendant of robbery with a firearm as follows:

Now, members of the jury, I charge that for you to find either defendant on trial here guilty of robbery with a firearm, the State must prove seven things beyond a reasonable doubt.

First, that the particular defendant, *either acting by himself or with others*, took property from the person of another or from the other's presence.

Second, that the defendant himself *or acting together with other persons* carried away the property.

. . .

Fourth, that the defendant knew that the defendant *and those, if any, with whom he was acting in concert* were not entitled to take the property.

Fifth, that the defendant *or someone with whom he was acting in concert* intended to deprive the victim of the property's use permanently.

Sixth, the State must also prove beyond a reasonable doubt that the defendant *or someone acting in concert with him* had the firearm in his possession at the time the property was obtained or that it . . . reasonably appeared to the victim that a firearm was being used in which case you can infer that the instrument was what the defendant *or one acting in concert with* a defendant represented the instrument to be.

. . .

And seventh . . . the State must also prove beyond a reasonable doubt that the defendant, *either by himself or acting together with other persons*, obtained the property by

endangering or threatening the life of Clifford Hobson with the firearm.

(Emphasis added). In its trial mandate on armed robbery the trial court charged:

> Those, members of the jury, are the seven elements of robbery with a firearm. So . . . I charge that if you find from the evidence beyond a reasonable doubt that on or about . . . January 4th, 1996, the defendant, Michael Christopher Thompson, *acting either by himself or together with other persons,* had in his possession a firearm and took and carried away property from the person or presence of Clifford Hobson without his voluntary consent by endangering or threatening his life with the use or threatened use of the firearm, the defendant Michael Christopher Thompson knowing that he was not entitled to take the property and he, Michael Christopher Thompson, *acting by himself or with other persons,* intended to deprive Clifford Hobson of the property's use permanently, then it would be your duty to return a verdict of guilty of robbery with a firearm.

(Emphasis added).

We first note that the trial court's general instructions on the doctrine of acting in concert make it clear that Defendant could only be found guilty of robbery with a firearm if he acted "with a common purpose to commit a robbery." These instructions comport with the statement in *Blankenship* that "specific intent may be proved by evidence tending to show that the specific intent crime was a part of the common plan." *Blankenship,* 337 N.C. at 558, 447 S.E.2d at 736. Second, the instructions focus on the single crime of robbery and are consistent with the statement in *Blankenship* that "where a single crime is involved, one may be found guilty of committing the crime if he is at the scene with another with whom he shares a common plan to commit the crime, although the other person does all the acts necessary to effect commission of the crime . . . ." *Id.* at 557-58, 447 S.E.2d at 736.

Finally, the fact that the trial court's instruction permitted the jury to convict Defendant of robbery with a firearm without proof that Defendant shared a common purpose to use a firearm in the perpetration of the robbery does not result in error in light of the well-established principle that N.C. Gen. Stat. § 14-87 "does not create a new crime, it merely increases the punishment which may be

imposed for common law robbery where the perpetrator employs a weapon." *State v. Gibbons*, 303 N.C. 484, 490, 279 S.E.2d 574, 578 (1981). "The focus of [N.C.G.S. § 14-87] is not the creation of a new crime for commission of an offense with a firearm, but the punishment of a specific person who has committed a robbery which endangers a specific victim." *Id.* For the foregoing reasons, we find no error in the instructions challenged by Defendant.

[6] Defendant further argues that the trial court erred by failing to find as a statutory mitigating factor that

> [p]rior to arrest or at an early stage of the criminal process, the defendant voluntarily acknowledged wrongdoing in connection with the offense to a law enforcement officer.

N.C. Gen. Stat. § 15A-1340.16(e)(11) (1999). Defendant cites his confession to Detective Williams as an acknowledgment of wrongdoing at an early stage of the criminal process. However, Defendant concedes "that under existing caselaw [sic] the defendant may not have been entitled to a finding of this mitigating factor because the defendant at trial challenged the voluntariness of this statement." In *State v. Hayes*, 314 N.C. 460, 334 S.E.2d 741 (1985), the Supreme Court held "that if a defendant repudiates his inculpatory statement, he is not entitled to a finding of this mitigating circumstance." *Id.* at 474, 334 S.E.2d at 749. Here, the record indicates, and Defendant concedes, that he repudiated his confession at trial by attacking its voluntariness. Therefore, the trial court did not commit error in refusing to find as a mitigating factor that prior to arrest or at an early stage of the criminal process, Defendant voluntarily acknowledged wrongdoing in connection with the crime.

Nonetheless, Defendant argues that denying him the benefit of this mitigating factor simply because he asserted his constitutional right to challenge the voluntariness of his confession impermissibly burdens his constitutional rights to present a defense, to testify on his own behalf, and to due process of law. However, the transcript reveals that Defendant's trial counsel did not raise this constitutional issue in the court below. "Constitutional issues not raised and passed upon at trial will not be considered for the first time on appeal." *State v. Lloyd*, 354 N.C. 76, 86-87, 552 S.E.2d 596, 607 (2001). Accordingly, Defendant's final assignment of error is overruled.

For the foregoing reasons, we conclude that Defendant received a trial and sentencing free from prejudicial error.

**BUNN LAKE PROP. OWNER'S ASS'N, INC. v. SETZER**

[149 N.C. App. 289 (2002)]

No error.

Judges GREENE and McCULLOUGH concur.