STATE OF NORTH CAROLINA v. RICKY ANDREWS

No. COA02-691

(Filed 3 May 2005)

**1. Homicide— first-degree murder—short-form indictment— constitutionality**

The short-form indictment used to charge defendant with first-degree murder was constitutional and sufficient to support defendant's conviction of felony murder.

**2. Confessions and Incriminating Statements— Miranda rights—mentally retarded defendants**

The trial court did not err in a first-degree felony murder and conspiracy to commit robbery case by denying defendant's motion to suppress his statement to the police allegedly obtained in violation of his Miranda rights even though defendant had an IQ of 61, because the findings all support the conclusion that the statement was voluntarily given and that defendant knowingly waived his Miranda rights.

**3. Evidence— exhibit—enlargement of defendant's statement**

The trial court did not abuse its discretion in a first-degree felony murder and conspiracy to commit robbery case by permitting the State to display to the jury an enlarged image of defendant's statement to the police, because: (1) defendant's statement was already held to be admissible; and (2) the enlarged version was permissible for illustrative purposes.

**4. Conspiracy— robbery—instructions—diminished capacity**

The trial court did not commit plain error by failing to instruct the jury on diminished capacity regarding the conspiracy to commit robbery charge, because: (1) defendant's evidence concerning his low IQ, smoking marijuana, and sharing Hennessy over the course of the evening was not so overwhelming as to render the lack of a voluntary intoxication instruction prejudicial;

STATE v. ANDREWS

[170 N.C. App. 68 (2005)]

(2) a voluntary intoxication instruction is not required even where there is testimony that defendant consumed intoxicating beverages or controlled substances; (3) there was testimony that defendant did not appear intoxicated; (4) finding defendant not guilty of first-degree murder based on premeditation and deliberation does not necessarily imply the jury concluded defendant had a diminished capacity to form any intent; (5) considering defendant's confession, a witness's testimony, the victim's statement regarding the shooting, and the forensic evidence, the jury had sufficient basis for its verdicts; and (6) it cannot be said that the jurors would have reached a different result had they been given this instruction.

## 5. Constitutional Law— effective assistance of counsel—failure to request instruction

Defense counsel's failure to request an instruction on diminished capacity regarding the conspiracy to commit robbery charge did not amount to ineffective assistance of counsel, because the Court of Appeals already determined that there was no plain error in the failure to provide this instruction to the jury.

## 6. Criminal Law— instruction by trial court—defendant confessed to crimes

The trial court did not commit plain error in a first-degree felony murder and conspiracy to commit robbery case by instructing the jury that the evidence tended to show that defendant confessed to the crimes, because: (1) the instruction given by the trial court was verbatim from pattern jury instruction N.C.P.I.—Crim. 104.70; (2) the Supreme Court has held that this instruction makes it clear that even though there was evidence tending to show that defendant had made an admission, it was solely for the jury to determine whether defendant in fact had made any admission; and (3) the instruction was based on a reasonable view of the evidence.

## 7. Homicide— instruction—voluntary manslaughter based on imperfect self-defense

The trial court did not commit plain error in a first-degree felony murder case by failing to instruct sua sponte on voluntary manslaughter based on imperfect self-defense, because: (1) defendant was not found guilty of first-degree murder based on a theory of premeditation and deliberation, which could be mitigated by imperfect self-defense to voluntary manslaughter; and

(2) the jury found defendant guilty based on the felony murder rule, and imperfect self-defense is not available as a defense to the underlying robbery.

Appeal by defendant from judgment entered 8 August 2001 by Judge. Michael E. Helms in Edgecombe County Superior Court. Originally heard in the Court of Appeals 24 March 2003. Remanded for further evidentiary hearing by order entered 8 July 2003, and heard in the Court of Appeals 11 April 2005.

*Roy A. Cooper, III, Attorney General, by C. Norman Young, Jr., Assistant Attorney General, for the State.*

*Ann B. Petersen for defendant-appellant.*

MARTIN, Chief Judge.

Defendant was charged with first-degree murder, robbery with a dangerous weapon, and conspiracy to commit robbery with a dangerous weapon. At trial, the evidence tended to show that on 15 November 1999, defendant and Lynn Downy had discussed committing robbery while they were drinking and smoking marijuana. They went to Winshell Harris's (Harris) house, to purchase additional marijuana. When they arrived, Harris was not at home, but his brother, Michael Wilson (Wilson), told them to return in a half an hour. Upon their return, Wilson directed them to a side entrance, in order for him to visit with his friend in the living room, while Harris visited defendant and Downy in the kitchen. Wilson testified that at one point he entered the kitchen to get a glass of water and the conversation between Harris, defendant and Downy stopped. He also stated that he noticed Harris sitting at the table, which had Harris's nine millimeter gun and $800 on it.

Downy testified that while they were waiting on Harris's marijuana supplier, other customers came and went. He did not notice either Harris or defendant with a gun, nor did he see money on the table. He stated that after waiting for five minutes or so, Harris informed them the supplier was unable to come, so Downy decided to leave. A minute or two after leaving he heard shots, but he did not look back. Downy also testified that he asked defendant if he had shot Harris, but that defendant swore he did not.

Wilson testified that he heard five shots and, before he could enter the kitchen, Harris entered the living room, bleeding pro-

**STATE v. ANDREWS**

[170 N.C. App. 68 (2005)]

fusely. Harris told Wilson that "Little Rick", whom Wilson knew as defendant, had shot him. Wilson helped his brother to a chair and returned to the kitchen to see if defendant and Downy were still there. The back door was open and the money and gun were gone from the table.

When Officer L.C. Peele arrived on the scene, he observed Harris bleeding, and Harris informed him he had been shot. Peele accompanied Harris to the hospital, noting that Harris was conscious and alert, but Harris subsequently suffered cardiac arrest and died.

Based on the statements made by Wilson, defendant was arrested and his residence was searched. No evidence of the crime was found on his person or at his residence. While defendant was in the patrol car, Detective Michael Lewis read him his *Miranda* rights. He did not assert his rights and agreed to speak with Lewis. Lewis testified that defendant seemed agitated and that while there was a moderate odor of alcohol, defendant did not have difficulty speaking or walking, glassy eyes, or slurred speech. Initially, defendant denied involvement in the shooting, but on further questioning at the police station, he began crying and confessed that he and Harris were friends and that "it was not supposed to happen like that."

Defendant's statement explained that he and Downy were together when Downy said he needed money, and that Harris had some, so they planned a robbery and walked to Harris's house. According to the statement, Downy planned to trade his .45 caliber handgun for half an ounce of cocaine. When meeting with Harris, Harris handed Downy a nine millimeter pistol to look at, and Downy grabbed the gun and the cash from the table. Defendant stated that he thought Harris was reaching for a gun, so he pulled his .38 revolver from his pants and shot at Harris. According to this statement, defendant hid his gun under some leaves behind a shed at 406 Carolina Avenue, burned the clothes he was wearing, and Downy kept Harris's pistol and the money from the table. A .38 caliber revolver was found at the Carolina Avenue location.

At defendant's request, Lewis wrote out this statement and went over it line by line with him. This statement was read to the jury at trial, and enlarged on a poster entitled, "Confession of Ricky Andrews." On cross-examination, Lewis admitted that he did not write down every word that defendant said and did write down words defendant did not actually say.

STATE v. ANDREWS

[170 N.C. App. 68 (2005)]

Crime scene investigator Sandra Kay Rose testified that she recovered one projectile from the wall of Harris's home, and several from his body. Forensic firearms expert Carol Ann Marshburn testified that the projectile recovered from the residence and two of the projectiles recovered from Harris were fired from the .38 caliber revolver discovered at the location indicated in defendant's statement. The two other projectiles came from the same class type of firearm as defendant's but lacked "enough individual characteristics" to be positively identified as being from defendant's revolver.

Defendant presented a court-appointed expert witness, Dr. Gary H. Bachara, who testified that the defendant had an I.Q. of 61, equivalent to the mental age of an eight-year-old. He explained that his test results were consistent with defendant's school records. Dr. Bachara opined that people with I.Q.'s of 61 are impulsive and lack an ability to form the intent to plan "even hours in the future." He also stated that he did not believe defendant would understand some of the words used in his written statement.

The jury convicted defendant of first-degree felony murder, conspiracy to commit robbery, and robbery with a firearm. Defendant was sentenced to life imprisonment without parole for the first-degree murder and conspiracy to commit robbery offenses, and the judgment on the robbery with firearm was arrested. From these judgments, defendant appealed.

On appeal, by order dated 8 July 2003, this Court remanded for "an evidentiary hearing concerning the admissibility of the statements made by defendant to police following his arrest." This evidentiary hearing was held on 23 September 2004, after which the court found facts and concluded:

1. That there was no offer of hope, reward or inducement to the defendant to make a statement.

2. That there was no threat or suggestive violence or show of violence to persuade or induce the defendant to make a statement.

3. That any statement made by the defendant to Detective Mike Lewis of the Rocky Mount Police Department on December 16, 1999 was made voluntarily, knowingly and understandingly.

4. That the defendant was in full understanding of his constitutional rights to remain silent and rights to counsel.

5. That he purposely, freely, knowingly and voluntarily waived each of those rights and, thereupon, made a statement to Detective Lewis.

6. That the warning given by Detective Lewis was in all respects in compliance with the requirements of "Miranda."

7. That the defendant's admission was voluntarily and made understandingly and without any evidence of coercion.

8. That Dr. Bachara never said the defendant could not understand his rights.

9. That defendant had the capacity to knowingly and understandingly waive his rights under Miranda.

---

Defendant argues it was: 1) error to try defendant and sentence him for felony murder based on a short form indictment; 2) a violation of defendant's *Miranda* rights to admit defendant's statement to police; 3) error to admit an enlargement of this statement for illustrative purposes; 4) plain error for the trial court to fail to instruct the jury regarding diminished capacity to form specific intent necessary for the underlying felony of robbery or conspiracy to commit robbery; 5) a violation of defendant's right to effective assistance of counsel to fail to request these instructions; 6) error to instruct the jury "that the evidence tended to show the defendant confessed;" and 7) error not to instruct on voluntary manslaughter based on imperfect self-defense. After careful consideration of his arguments, we hold defendant received a fair trial, free from prejudicial error.

**[1]** Defendant first argues that the short-form indictment does not allege all the elements of first-degree murder as is required by *Jones v. United States*, 526 U.S. 227, 143 L. Ed. 2d 311 (1999), and applied to state statutes in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435 (2000). Our Supreme Court has "held that the short-form indictment is sufficient to charge first-degree murder on the basis of any of the theories . . . set forth in N.C.G.S. § 14-17." *State v. Braxton*, 352 N.C. 158, 174, 531 S.E.2d 428, 437 (2000), *cert. denied*, 531 U.S. 1130, 148 L. Ed. 2d 797 (2001). N.C. Gen. Stat. § 14-17 defines first and second degree murder, including murder "committed in the perpetration or attempted perpetration of any . . . robbery . . . or other felony committed or attempted with the use of a deadly weapon." N.C. Gen. Stat. § 14-17 (2003). The indictment in this case alleged first-degree

murder and referenced section 14-17; accordingly, this assignment of error is overruled.

[2] In defendant's second argument he maintains the trial court erred in denying his motion to suppress his statement to the police because it was obtained in violation of his *Miranda* rights. On appeal the findings of fact made by a trial court "following a voir dire hearing on the voluntariness of a confession are conclusive" as long they are supported by competent evidence. *State v. Massey*, 316 N.C. 558, 573, 342 S.E.2d 811, 820 (1986). Our Supreme Court has "consistently held that a defendant's subnormal mental capacity is a factor to be considered when determining whether a knowing and intelligent waiver of rights has been made" but lack of intelligence alone does not "render an incustody statement incompetent if it is in all other respects voluntary and understandingly made." *State v. Jones*, 153 N.C. App. 358, 366, 570 S.E.2d 128, 135 (2002) (quoting *State v. Fincher*, 309 N.C. 1, 8, 305 S.E.2d 685, 690 (1983)); *see also Massey*, 316 N.C. at 575, 342 S.E.2d at 821 (mildly mentally retarded 18-year-old defendant with a mental age .of ten or eleven gave voluntary confession); *State v. Thompson*, 287 N.C. 303, 319, 214 S.E.2d 742, 752 (1975) (finding a 19-year-old defendant with an I.Q. of 55 capable of waiving his rights). We examine "the totality of the circumstances, and in the case of mentally retarded defendants, we pay particular attention to the defendant's personal characteristics and the details of the interrogation." *State v. Brown*, 112 N.C. App. 390, 396, 436 S.E.2d 163, 167 (1993), *aff'd*, 339 N.C. 606, 453 S.E.2d 165-66 (1995).

At the evidentiary hearing on this issue, the trial court reviewed the evidence and made findings examining the totality of the circumstances. The hearing included re-examinations of the arresting and questioning officer and the psychologist that examined the defendant. The court found that the warnings given by the officer complied with the requirements of *Miranda* and that defendant was not threatened, physically coerced, or offered a reward, and he did not appear to be under the influence of alcohol or drugs. At defendant's trial, during the initial voir dire on the motion to suppress, the trial court found that defendant indicated that he understood his rights; that during the interview at the police station, after about thirty minutes, the defendant "broke down" and made a statement; and that he was not denied food, water or an opportunity to use the bathroom. The trial court also noted that defendant recounted details of his involvement in the shooting and had a prior record. These findings all support the conclusion that the statement was voluntarily given and that

defendant knowingly waived his *Miranda* rights. Therefore it was not error for the trial court to admit defendant's confession, and this assignment of error is overruled.

**[3]** Defendant's third argument is that it was prejudicial error for the trial court to permit the State to display to the jury an enlarged image of his statement. Presentation of evidence is within the trial court's discretion and will not be disturbed on appeal absent an abuse of discretion. *State v. Waddell,* 351 N.C. 413, 423, 527 S.E.2d 644, 651 (2000). Because we have already concluded that the defendant's statement was admissible, it was not error for the trial court to permit the State to display the enlarged version for illustrative purposes. *See State v. Thompson,* 149 N.C. App. 276, 283, 560 S.E.2d 568, 573, *disc. review denied,* 355 N.C. 499, 564 S.E.2d 231 (2002) (no error to admit defendant's ˙confession after concluding it was voluntary); *see also State v. Harris,* 315 N.C. 556, 562, 340 S.E.2d 383, 387 (1986) (distributing copies of the handwritten statement to each juror did not prejudice defendant). Accordingly, this assignment of error is overruled.

Defendant's remaining arguments all relate to the trial court's instructions to the jury. He maintains that 1) it was plain error not to instruct on diminished capacity regarding the underlying robbery for felony murder or for conspiracy, and counsel's failure to request this instruction amounts to ineffective assistance; 2) the trial court erred when it instructed that the evidence tended to show defendant confessed; and 3) there was error in the trial court's failure to instruct on voluntary manslaughter based on a theory of imperfect self-defense. We will address each of these arguments in turn.

As an initial matter, we note that defendant did not request or propose any of these instructions at trial, and thus has not preserved his right to review. *See* N.C.R. App. P. 10(b)(2) (2004); *State v. Gay,* 334 N.C. 467, 486, 434 S.E.2d 840, 851 (1993). Therefore, we review using the plain error standard. Plain error is error that either amounts to the denial of a fundamental right or is "so lacking in its elements that justice cannot have been done." *State v. Carpenter,* 147 N.C. App. 386, 397, 556 S.E.2d 316, 323 (2001), *cert. denied,* 536 U.S. 967, 153 L. Ed. 2d 851 (2002) (internal citations omitted). In order to prevail under the plain error analysis, the defendant must show 1) there was error, and 2) that absent the error, the jury would have reached a different result. *Id.*

**[4]** Defendant contends the jury's verdict finding defendant not guilty of first-degree murder by premeditation and deliberation indicates

the jurors determined that defendant lacked sufficient mental capacity to form specific intent for either armed robbery or conspiracy to commit robbery. Had they been properly instructed by the trial court regarding diminished capacity in terms of these charges, defendant maintains the jury would have been unable to find the specific intent for those charges as well. We disagree.

Defendant's arguments regarding instructions about the underlying robbery are not properly before us. Defendant's assignments of error do not plainly "specifically and distinctly" allege plain error regarding the robbery charge. N.C.R. App. P. 10(c)(4) (2004); *State v. Dennison*, 359 N.C. 312, 313, 608 S.E.2d 756, 757 (2005). Therefore, we only examine the diminished capacity instruction in relationship to the conspiracy charge.

Reviewing for plain error, we conclude that defendant's evidence concerning his low I.Q., smoking marijuana, and sharing Hennessy over the course of the evening was not so overwhelming as to render the lack of a voluntary intoxication instruction prejudicial. It is "well established" that a voluntary intoxication instruction is not required even where there is testimony that defendant consumed "intoxicating beverages or controlled substances." *State v. Cheek*, 351 N.C. 48, 74, 520 S.E.2d 545, 560 (1999), *cert. denied*, —— U.S. ——, 160 L. Ed. 2d 137 (2004) (internal citation omitted). Moreover, there was testimony that defendant did not appear intoxicated. Finding defendant not guilty of first-degree murder based on premeditation and deliberation does not necessarily imply the jury concluded defendant had a diminished capacity to form any intent. Additionally, considering the defendant's confession, the testimony of Downy, and the victim's statement regarding the shooting and the forensic evidence, the jury had sufficient basis for its verdicts. We cannot say that had the jurors been given this instruction, they would have reached a different result. This assignment of error is overruled.

**[5]** Defendant further maintains that the failure of defense counsel to request this instruction constitutes ineffective assistance of counsel. We disagree. When raising a claim of ineffective assistance of counsel, a defendant has to satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674 (1984) to show counsel's performance failed to meet an objective standard of reasonableness. *State v. Gainey*, 355 N.C. 73, 112, 558 S.E.2d 463, 488, *cert. denied*, 537 U.S. 896, 154 L. Ed. 2d 165 (2002). This burden requires showing that 1) counsel erred so seriously so as

not to function as counsel and 2) the deficient performance deprived defendant of a fair trial. Because we have determined that there was no plain error in the failure to provide this instruction to the jury, "defendant's assertion of ineffective assistance of counsel with respect thereto must also fail." *State v. Seagroves*, 78 N.C. App. 49, 54, 336 S.E.2d 684, 688 (1985), *disc. review denied*, 316 N.C. 384, 342 S.E.2d 905 (1986).

[6] Defendant next contends that the trial court erred when it instructed the jury that the evidence tended to show that defendant confessed to the crimes charged. The judge instructed the jury, in pertinent part:

> There's evidence which tends to show that the defendant confessed that he committed the crime charged in this case.

> If you find that the defendant made that confession, then you should consider all of the circumstances under which it was made in determining whether it was a truthful confession and the weight you will give to it.

Again, we review for plain error since defendant did not object to this instruction at trial. This instruction is verbatim from the pattern jury instruction. N.C.P.I.—Crim. 104.70 (1970). Our Supreme Court has held that this instruction makes it clear "that even though there was evidence tending to show that the defendant had made an admission, it was solely for the jury to determine whether the defendant in fact had made any admission." *State v. McKoy*, 331 N.C. 731, 734, 417 S.E.2d 244, 246-47 (1992). We conclude that since the instruction was based upon a reasonable view of the evidence, it was not erroneous. *State v. Cannon*, 341 N.C. 79, 90, 459 S.E.2d 238, 245 (1995).

[7] Finally, defendant argues the trial court erred in failing to instruct on voluntary manslaughter based on imperfect self-defense. "[S]elf-defense, perfect or imperfect, is not a defense to first-degree murder under the felony murder theory, and only perfect self-defense is applicable to the underlying felonies." *State v. Richardson*, 341 N.C. 658, 668, 462 S.E.2d 492, 499 (1995). If imperfect self-defense applied to felony murder, it would defeat the purpose of the felony murder rule, which is "to deter even accidental killings from occurring during the commission of a dangerous felony." *Id.*

In this case, defendant was not found guilty of first-degree murder based on a theory of premeditation and deliberation, which can

IN RE I.S.

[170 N.C. App. 78 (2005)]

be mitigated by imperfect self-defense to voluntary manslaughter. *See State v. Bush,* 307 N.C. 152, 159, 297 S.E.2d 563, 568 (1982) (noting that the exercise of imperfect self-defense leaves defendant guilty of at least voluntary manslaughter). Instead, the jury found the defendant guilty based on the felony murder rule, and imperfect self-defense is not available as a defense to the underlying robbery. The failure of the trial court to instruct *sua sponte* on imperfect self-defense and voluntary manslaughter, therefore, does not rise to the level of plain error. We hold that defendant received a fair trial, free from prejudicial error.

No error.

Judges HUNTER and CALABRIA concur.